## CRUZ ET AL. *v.* HAUCK, SHERIFF

No. 70–5343.  Decided November 16, 1971

PER CURIAM.

The motion for leave to proceed *in forma pauperis* and the petition for a writ of certiorari are granted.  The judgment is vacated and the case is remanded to the United States Court of Appeals for the Fifth Circuit for further consideration in light of *Younger* v. *Gilmore, ante,* p. 15.

MR. JUSTICE DOUGLAS, concurring.

Petitioners are prisoners who claim that the prison authorities have denied them access to law books needed to seek judicial remedies.  They are inmates of the Bexar County Jail in Texas and instituted this action in the District Court to restrain the respondent's interference with their reasonable access to hardbound law books and other legal matter.[1]  They asserted that county jail regulations and practices deprived them of their rights to seek judicial redress.  Their custodians answered that prison security necessitated removing hardback covers as part of an overall scheme to arrest smuggling of contraband.  Without conducting a hearing into the matter, the District Court summarily dismissed the complaint.[2]

---

[1] In their complaint petitioners relied upon 28 U. S. C. § 1343 (3); 28 U. S. C. § 2201; and 42 U. S. C. § 1983.

[2] *Cruz* v. *Hauck*, Civil Action SA70CA182 (WD Tex., filed Oct. 30, 1970) (unreported).

The question is an important one in the evolution by statutes and constitutional decisions of a Bill of Rights for prisoners. Prisoners are not statistics, known only to a computer, but humans entitled to all the amenities and privileges of other persons, save as confinement and necessary security measures curtail their activities. Whatever security measures may be needed respecting books, it is not conceivably plausible to maintain that essential books can be totally banned.

That question is submerged in this case as the initial issue concerns these prisoners' request to proceed *in forma pauperis* on appeal from the District Court's dismissal of their action, the Court of Appeals having refused to docket their cases without prepayment of filing fees and security which litigants normally advance.

Petitioners filed a timely notice of appeal and pursuant to Fed. Rule App. Proc. 24 (a) (first paragraph) sought from the District Judge leave to appeal *in forma pauperis* as to prepayment of a $25 filing fee [3] and the $250 minimum security deposit required by Fed. Rule App. Proc. 7. The District Judge refused the request, certifying in relevant part that: "This Court . . . is of the opinion that any appeal taken from the order of denial in this case would be frivolous, without merit, and not taken in good faith." [4] No other explanation was offered although in his earlier unreported order dismissing the original action the District Judge said that prisoners do not have "a right to be furnished with an extensive collection of legal materials" and that courts "may not interfere with the conduct of a prison." [5]

---

[3] United States Court of Appeals for the Fifth Circuit Rule 8 (d).

[4] *Cruz* v. *Hauck,* Civil Action SA70CA182 (WD Tex., filed Dec. 3, 1970) (unreported).

[5] *Cruz* v. *Hauck,* Civil Action SA70CA182 (WD Tex., filed Oct. 28, 1970) (unreported).

Petitioners then applied to the Court of Appeals for a similar waiver of filing fees and security. Their application was denied without opinion [6] and their motion for reconsideration was also refused without opinion.[7] Presented with their motion for reconsideration were memoranda posing their primary contention now before this Court that these denials of leave to proceed *in forma pauperis* offended these petitioners' rights of equal access to judicial machinery.[8]

## I

We have held, in line with *Griffin* v. *Illinois,* 351 U. S. 12 (1956), that an indigent prisoner cannot be deprived of a direct criminal appeal or of state habeas relief *solely* on account of his inability to prepay docketing fees. *Smith* v. *Bennett,* 365 U. S. 708 (1961) ($4 filing fee for state habeas action and $3 filing fee for appeal therefrom); *Burns* v. *Ohio,* 360 U. S. 252 (1959) ($20 filing fee for discretionary review of criminal appeal).[9] In 1892 Congress authorized the federal courts to provide the disadvantaged with a wide range of *in forma pauperis* relief. Act of July 20, 1892, 27 Stat. 252. The benefits of this

[6] *Cruz* v. *Hauck,* Misc. No. 1964 (CA5, filed Feb. 1, 1971).

[7] *Cruz* v. *Hauck,* Misc. No. 1964 (CA5, filed Mar. 12, 1971).

[8] The issue at stake in the appeal was clearly not frivolous as indicated by our decision in *Younger* v. *Gilmore, ante,* p. 15, that there are limits on the extent to which prison officials may restrict inmates' access to law books. On at least 21 occasions this Court has reversed lower courts' holdings that only frivolous claims were sought to be presented. *Rubio* v. *United States,* 387 U. S. 90 (1967); *Robinson* v. *United States,* 372 U. S. 527 (1963); *Jones* v. *United States,* 371 U. S. 25 (1962); *Gilliam* v. *United States,* 370 U. S. 727 (1962); *Garrett* v. *United States,* 369 U. S. 662 (1962); *Kemp* v. *United States,* 369 U. S. 661 (1962); *Coppedge* v. *United States,* 369 U. S. 438 (1962); see 14 cases prior to *Coppedge* cited *id.,* at 440–441, n. 1.

[9] See also *Roberts* v. *LaVallee,* 389 U. S. 40 (1967); *Long* v. *District Court of Iowa,* 385 U. S. 192 (1966); *Draper* v. *Washington,* 372 U. S. 487 (1963); *Douglas* v. *California,* 372 U. S. 353 (1963).

generous provision, now codified at 28 U. S. C. § 1915, have been limited, however, by the important proviso added in 1910 (36 Stat. 866) which, as now amended, reads:

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."

"Good faith" has been defined as a requirement that an appeal present a nonfrivolous question for review. If the district court certifies that an appeal would not present such a question, then an indigent may ask the court of appeals for permission to proceed *in forma pauperis*. That court must grant the renewed motion if after a *de novo* determination it disagrees with the district court's application of the good-faith test. If both lower courts refuse permission, then, unless this Court vacates the court of appeals' finding, the pauper's appeal is ended without a hearing on the merits. See Fed. Rule App. Proc. 24 (a). It is important that in all of these proceedings the only cognizable issue is whether a summary survey (as opposed to plenary deliberation) suggests that a substantial argument could be presented. For a discussion of the procedures employed see *Coppedge* v. *United States,* 369 U. S. 438 (1962); *Hardy* v. *United States,* 375 U. S. 277 (1964).

## II

Our holdings have steadily chipped away at the proposition that appeals of the poor can be disposed of solely on summary and abbreviated inquiries into frivolity rather than upon the plenary consideration granted paying appellants.[10]   In *Eskridge* v. *Washington Prison*

[10] Although no explicit equal protection clause is directed by the Constitution against the Federal Government the concept of equal protection of the laws is incorporated into the Due Process Clause of the Fifth Amendment. *Bolling* v. *Sharpe,* 347 U. S. 497 (1954).

*Board,* 357 U. S. 214 (1958), we held that a State may not withhold a transcript and thereby deny an appeal to a poor man merely because a trial judge believed his own conduct had avoided the production of nonfrivolous questions for review. See also *Ross* v. *Schneckloth,* 357 U. S. 575 (1958). In *Lane* v. *Brown,* 372 U. S. 477 (1963), we decided that an impoverished prisoner's appeal from a state *coram nobis* hearing could not be thwarted simply because a public defender officer believed his case lacked merit. In *Ellis* v. *United States,* 356 U. S. 674 (1958), we emphasized that a criminal appellant seeking to establish nonfrivolity under 28 U. S. C. § 1915 is entitled to more than appointed counsel's private view that his appeal would be worthless and that if counsel withdrew for that reason the Court of Appeals was duty bound to replace him. We have also held that a Court of Appeals may not overrule the permission granted by a District Court to proceed *in forma pauperis, McGann* v. *United States,* 362 U. S. 309 (1960), but that a Court of Appeals must review *de novo* a trial judge's certification that an appeal would not be in good faith, *Johnson* v. *United States,* 352 U. S. 565 (1957).

Moreover, in federal criminal appeals on direct review most circuits have provided as a matter of course the entire panoply of § 1915 relief, including counsel, transcripts, and waiver of filing fees, and security, merely upon a showing of poverty. And, to the extent that the nonfrivolity test is still enforceable elsewhere, our opinions in *Coppedge, supra,* and *Hardy, supra,* have partially attenuated its harsher effects by requiring the appointment of counsel and the provision of transcripts for the preliminary purpose of ascertaining whether appeals would produce worthwhile issues.

It is true, of course, that most of these decisions in-

volved criminal appeals rather than civil appeals.[11]   But
the equal protection concept is "not limited to crim-
inal prosecutions" and its "protections extend as well to
civil matters."   See *Williams* v. *Shaffer*, 385 U. S. 1037,
1039 (1967).   Indeed, last Term, in *Boddie* v. *Connecti-
cut*, 401 U. S. 371 (1971), we held on equal protection and
due process grounds that a State could not deny a divorce
to an impecunious wife solely because she could not pay
relatively small filing and service-of-process fees.   More-
over, of the *Griffin* progeny at least two of our opinions
concerned civil habeas appeals, condemning filing fees
substantially less burdensome than those required below
by the Fifth Circuit.   See *Long* v. *District Court of Iowa*,
385 U. S. 192 (1966), and *Smith* v. *Bennett, supra.*   And
lower court decisions have nurtured the sturdy expansion
of *Griffin* to non-habeas civil appeals.   In a civil rights
case similar to the instant one, *Lockhart* v. *D'Urso*, 408
F. 2d 354 (1969), the Third Circuit held that *in forma
pauperis* aid should normally be granted as a matter of
course in order to minimize courts' treatment of litigants
based upon economic circumstances.   *Id.*, at 355.   The
upshot of these judicial pronouncements was forcefully
summarized by Mr. Justice Black last Term: "In my
view, the decision in *Boddie* v. *Connecticut* can safely
rest on only one crucial foundation—that the civil courts
of the United States and each of the States belong to the
people of this country and that no person can be denied
access to those courts, either for a trial or an appeal,
because he cannot pay a fee, finance a bond, risk a
penalty, or afford to hire an attorney."   *Meltzer* v.

---

[11] For a discussion of application of our *in forma pauperis* decisions
to civil appeals in the federal courts, see Blackmun, Allowance of
In Forma Pauperis Appeals in § 2255 and Habeas Corpus Cases,
43 F. R. D. 343 (1967).

*C. Buck LeCraw & Co.,* 402 U. S. 954, 955–956 (1971) (dissent from denial of certiorari).[12]

The elusive nature of the frivolity standard is partly demonstrated by the number of times this Court has vacated findings of bad faith by the lower courts.[13]  It is no answer that we may continue to rectify such errors on an *ad hoc* basis, for even so indigents are nonetheless required to return to courts of appeals and only then— after substantial delay—obtain plenary review on the merits.  *Coppedge, supra,* at 453.  Wealthier litigants, of course, have no such hurdles to pass before obtaining full review of their assignments of error.  Although these hurdles might be justifiable where indigents requested more substantial relief, they are too onerous where all that is at stake is the prepayment of a $25 filing fee and $250 security deposit.

It is apparent that this disparate treatment has the effect of classifying appellants according to wealth, which, like race, is a suspect classification.  *Griffin* v. *Illinois,* 351 U. S. 12 (1956); *Harper* v. *Virginia Bd. of Elections,* 383 U. S. 663 (1966).  See also *Shapiro* v. *Thompson,* 394 U. S. 618 (1969).  Accordingly, this classification could withstand challenge only upon a showing of compelling circumstances.  Respondent offers none but simply repeats the discredited maxim that paupers' appeals are privileges, not rights.[14]

Thus, I would not remand this case on the limited ground that the Court of Appeals may have underestimated the weight of the petitioners' claim.  Rather, I would hold that upon a showing of poverty courts of

---

[12] Together with seven other cases, 402 U. S. 954 n. *.

[13] See cases cited at n. 8.

[14] Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv. L. Rev. 1439 (1968).

appeals henceforth must waive prepayment and may not inquire into whether an appeal may eventually pose a fruitful issue, at least in cases, such as this one, involving fundamental civil liberties.

I would grant certiorari and remand the case to the Fifth Circuit so that these petitioners may have their appeal docketed without prepayment of fees or security.