**Joseph Carl BROWN, Jr., et al.,
Plaintiffs,**

v.

**Allyn R. SIELAFF et al.,
Defendants.**

**Civ. A. No. 72–879.**

United States District Court,
W. D. Pennsylvania.

June 14, 1973.

See also, D.C., 363 F.Supp. 707.

Joseph Carl Brown, Ralph Carter and James E. Bush, pro se.

Geoffrey Wozney and Donetta W. Ambrose, Asst. Attys. Gen., Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

SNYDER, District Judge.

Plaintiffs, Joseph Carl Brown, Jr., Ralph Carter, James E. Bush, et al., filed this class action against Allyn R. Sielaff, The Commissioner of Corrections of the State of Pennsylvania, Gilbert Walters, the Warden of the State Correctional Institution at Pittsburgh, Pennsylvania, and Joseph Angert, the Educational Director of the State Correctional Institution at Pittsburgh, alleging that the civil rights of said plaintiffs have been violated by the defendants who allegedly have conspired to prevent their access to both the Federal and State Courts. Plaintiffs' basis of their allegations is that the above named defendants refuse to purchase new law books for the prison library and that such are essential for the class named as plaintiffs to perfect their numerous appeals of conviction and to initiate civil actions which the law allows them.

The relief sought by plaintiffs is an Order of this Court directing the defendants to acquire numerous updated volumes of various legal books for plaintiffs' use and also to supply plaintiffs with facilities to reproduce copies of briefs and documents. By Order of Court of October 19, 1972, plaintiffs were permitted to file their cause of action in forma pauperis with costs to be borne by the United States. By Order of Court of October 25, 1972, the United States Marshal was directed to serve on the defendants a copy of that order, together with a summons and a certified copy of the complaint upon the named defendants. On November 16, 1972 defendants filed their motion to dismiss alleging inter alia that the matters referred to in the complaint are the sole concern of the Pennsylvania State Prison. A conference on nine (9) civil actions filed by Plaintiff Brown was scheduled to be held before the Honorable Joseph F. Weis, Jr. on December 26, 1973 at 2:00 P.M. At that time Attorney Stanley Stein represented the plaintiff and attended the conference on the plaintiff's behalf. On February 5, 1973 the plaintiffs here filed a motion seeking that a new conference be held alleging that the plaintiffs had no knowledge of the prior conference, and that:

"(3) The plaintiffs contend that to hold a conference relating to a civil action, only permitting agents of the state to attend, is a direct violation of their constitutional rights."

In a statement inserted at the end of their motion, plaintiffs stated:

"1. Stanley Stein, Esquire, appointed by this court on other actions filed by Joseph Brown, has not been appointed in the case set forth above. Also, it should be noted that his assistance is not wanted or needed." .

On February 14, 1973, the plaintiffs' request for a conference on this matter was denied. The Court also denied plaintiffs' application for a certificate of probable cause. Since the last pleadings and orders have been entered, the Honorable Joseph F. Weis, Jr. has been elevated to the Third Circuit Court of Appeals and the undersigned was elevated to the seat on the Bench of the Western District formerly occupied by Judge Weis. Hence, due to this situation, the case of Joseph Carl Brown, et al. vs. Allyn Sielaff, et al. at Civil Action 72–879 has been assigned to this member of the court for disposition.

Plaintiffs seek to bring their action under the jurisdiction of the Civil Rights Act alleging that because of the lack of up-to-date law books in the prison library, they are denied access to the courts. If such a proposition were so, one would not know it by viewing the record of Plaintiff Brown in the docket of the Court for the Western District of Pennsylvania. Mr. Brown has brought actions at the following docket numbers: Civil 70–559, 70–861, 70–940, 70–958, 70–980, 70–981, 70–982, 70–985, 70–1284, 71–150, 71–554, 71–717, 71–925, 71–1064, 72–13, 72–109, 72–193, 72–754, 72–755, 72–756, 72–879, 72–1109, 73–20, and Miscellaneous 4941, 4952, 5060, 5086, 5091, 5092, 5113, 5171, 5177, 5194, 5239, 5313, 5314, 5315, 5331, 5348, 5365, 5371, 5698 and 5748. In addition, as of this date a new civil action which has been listed at Miscellaneous 5784 has been brought to the attention of the Court.

Plaintiff Bush has brought a habeas corpus action at Civil 69–1389 and a civil rights action at Civil 72–772. Plaintiff Carter has filed a civil rights action in this court at Miscellaneous 4917.

In their Complaint, Plaintiffs merely assert that:

"(9) The defendant, Joseph Angert, has absolutely refused to order any law books for the inmate library at the State Correctional Institution. Plaintiff Brown was informed by the institutional librarian, Mr. Chess, that he had received strict orders from defendant Angert to the effect that he was to order no law books for the library."

■ Initially, we must point out that the mere fact that the law library at the prison is not up-to-date is no basis for bringing a civil rights action in the Federal District Court. The Third Circuit in Gaito v. Prasse, 312 F.2d 169 (3d Cir. 1963) held that allegations by a prisoner that he could not take an appeal because of lack of access to the prison library were no basis for predicating a complaint on the Civil Rights Act, 28 U.S. C.A. § 1343 and on 42 U.S.C.A. § 1983. The Court in Gaito v. Prasse, *supra*, outlined the administrative procedure available to the plaintiffs at 170–171:

"(T)here were rules and regulations adopted by the Commissioner of Correction of the Commonwealth of Pennsylvania, .and that these regulations permitted the appellant to have access to law books and legal material, but stated that prisoners could not retain the materials for their own use, though they might use them in their cells when necessary for the prosecution of their own case, and they could not be disseminated to other inmates. Further, that this was merely an administrative procedure and that if the appellant did not secure the proper redress, the procedure was to appeal to the Warden of the Institution, next, present the matter to the attention of the Diagnostic Clinic, located in the institution where the prisoner was serving his sentence, then to the Commissioner of Correction and finally to the Attorney General of the Commonwealth."

We are not granting defendant's motion to dismiss because plaintiffs failed to

exhaust their administrative remedies but merely are pointing out that such are available to the plaintiffs. Since plaintiffs in their complaint never allege that they have followed any administrative remedies nor that it would be futile to do so, they would not fall within the legal principles set forth in Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968).

In Hatfield v. Bailleaux, 290 F.2d 632 (9th Cir. 1961), the Court of Appeals for the Ninth Circuit held that:

"apart from due process considerations, the federal courts have no power to control or supervise state prison regulations and practices."

The Court went on to say:

"State authorities have no obligation under the federal Constitution to provide library facilities and an opportunity for their use to enable an inmate to search for legal loopholes in the judgment and sentence under which he is held, or to perform services which only a lawyer is trained to perform. All inmates are presumed to be confined under valid judgments and sentences. If an inmate believes he has a meritorious reason for attacking his, he must be given an opportunity to do so. But he has no due process right to spend his prison time or utilize prison facilities in an effort to discover a ground for overturning a presumptively valid judgment."

"Underlying the conclusions stated above is the fact, not to be overlooked, that inmates of a penitentiary are undergoing punishment for crimes of which they have been convicted. 'Lawful incarceration,' as the Supreme Court said in Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356, 'brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' ".

The Ninth Circuit in a later opinion Gilmore v. Lynch, 400 F.2d 228 (9th Cir. 1968) at 230, stated:

"Courts are currently struggling with the question of the extent of a prisoner's rights to have access to legal materials, e. g., our opinion in Hatfield v. Bailleaux, 290 F.2d 632 (9th Cir.), cert. denied, 368 U.S. 862, 82 S.Ct. 105, 7 L.Ed.2d 59 (1961). The Supreme Court has not yet spoken on the subject and the law can hardly be said to be settled."

In *Gilmore, supra,* the court held that a statute governing what legal materials would be contained in prison law libraries presented a substantial question of constitutional law and remanded to the district court for the convening of a three judge court. On remand a three judge court in Gilmore v. Lynch, 319 F. Supp. 105 (N.D.Cal.1970), affirmed 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971) held:

"The rights invoked by plaintiffs herein have been given considerable emphasis by past and present case law. Reasonable access to the courts is a constitutional imperative which has been held to prevail against a variety of state interests. Similarly, the right under the equal protection clause of the indigent and uneducated prisoner to the tools necessary to receive adequate hearing in the courts has received special re-enforcement by the federal courts in recent decades." (Citations omitted.)

In Cruz v. Hauck, 404 U.S. 59, 92 S. Ct. 313, 30 L.Ed.2d 217 (1971), Justice Douglas in a special concurring opinion wrote:

"Petitioners are prisoners who claim that the prison authorities have denied them access to law books needed to seek judicial remedies. They are inmates of the Bexar County Jail in Texas and instituted this action in the District Court to restrain the respondent's interference with their reasonable access to hardbound law books and other legal matter. They asserted that county jail regulations and practices deprived them of their right to seek judicial redress. Their custodi-

ans answered that prison security necessitated removing hardback covers as part of an overall scheme to arrest smuggling of contraband. Without conducting a hearing into the matter, the District Court summarily dismissed the complaint."

"The question is an important one in the evolution by statutes and constitutional decisions of a Bill of Rights for prisoners. Prisoners are not statistics, known only to a computer, but humans entitled to all the amenities and privileges of other persons, save as confinement and necessary security measures curtail their activities. Whatever security measures may be needed respecting books, it is not conceivably plausible to maintain that essential books can be totally banned."

Unlike *Cruz* and *Gilmore*, there is no allegation of either a total ban of essential books or any regulation on such and, therefore, plaintiffs do not fall within the principles set forth in those cases. Quite to the contrary, plaintiffs in their complaint set forth numerous methods through which legal materials are acquired by the class that is bringing this action.

The Court is well aware of the problems involving prisoners, the securing of their rights, etc., but this particular problem must be balanced by the requisite control that the state must exercise over prisoners while they are in the custody of the state.

In this situation, after reviewing the record, all past pleadings and the fact that the numerous attorneys have been appointed by the Court for Plaintiff Brown (all of whom he has rejected), we believe that the lack of the most up-to-date law books and facilities to reproduce documents have not denied plaintiffs access to the Federal Courts. A review of the record is conclusive to prove that plaintiffs have freely filed actions and taken appeals of their particular causes of action. Therefore, defendants' Motion to Dismiss will be granted since plaintiffs' allegations in their complaint fail to state a cause of action upon which relief can be granted.