Roger Lee WOODS, Petitioner-Appellant,

v.

Loren DAGGETT, Warden United States Penitentiary, Leavenworth, Kansas, Respondent-Appellee.

No. 75–1197.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 11, 1975.

Decided Aug. 30, 1976.

Rehearing Denied Oct. 8, 1976.

Martin L. Lipp, Boulder, Colo., for petitioner-appellant.

Mary K. Briscoe, Asst. U. S. Atty., Topeka, Kan. (E. Edward Johnson, U. S. Atty., Topeka, Kan., on the brief), for respondent-appellee.

Before SETH, HOLLOWAY and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

Petitioner Woods appeals the dismissal of his habeas case in which he alleged deprivation of First Amendment and due process rights. His complaint concerned refusal of prison authorities at Leavenworth Penitentiary to deliver to him several used law books mailed to Woods by his parents. One paperback volume (*Federal Rules of Civil Procedure*), which was missing from the prison law library, was given to him. The prison authorities' response shows that they acted under a Policy Statement guideline limiting publications to be received by inmates to those coming directly from the publisher, based on security considerations (R. 34–35). The trial court upheld the action of the prison authorities in these circumstances, and we agree. We do, however, vacate the judgment in one respect concerning the request for an order requiring notice to petitioner when books are denied him under the policy, and remand for reconsideration on that point.

The facts alleged in Woods' pleadings and an accompanying affidavit were essentially as follows. In July, 1974, a package for Woods arrived at Leavenworth containing several law books: *Freund, Constitutional Law*, Volumes 1 and 2 (hardback), and a paperback revision to them; *Kadish, Criminal Law and its Processes*, in one hardback volume, and a paperback revision to it; and a paperback edition of the *Federal Rules of Civil Procedure*. The respondent Warden's representatives refused to give them to Woods, stating that if one person were allowed books from home "they would be coming in by the box car load." (R. 7).

The petition further alleged that the reason given for the refusal was based on a Bureau of Prisons policy statement prohibiting entrance of books not sent from a publisher. Woods agreed to have the hardbacks cut off and alleged this would have solved the security problem, since once the hardbacks were removed the books could be easily inspected for contraband.

Woods claimed that such law books could not be banned, citing *Cruz v. Hauck*, 404 U.S. 59, 92 S.Ct. 313, 30 L.Ed.2d 217; *Gilmore v. Lynch*, 319 F.Supp. 105 (N.D.Cal.), aff'd sub nom. *Younger v. Gilmore*, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142; and *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718. Injunctive relief was sought against denial of any law books or legal material to Woods, and he stated that if the respondent finds that the hard covers are a security problem, respondent should permit them to be removed and then issue the book to petitioner. And he asked for written notice to be required of any books denied him and the security reason behind the denial.

An answer and return were filed,[1] with an affidavit from the attorney advisor for the Leavenworth Penitentiary. They stated that the box of law books for Woods was refused and returned to the private sender, with the exception of a paperback copy of the *Federal Rules of Civil Procedure*, which was then missing from the inmate library; that the refusal was made pursuant to Prison Policy Statement 2001.2B, par. 5, prohibiting introduction of books other than from the original source; that other than private correspondence, all printed material arriving at Leavenworth is generally required to be purchased from the publisher; and that "[i]t is virtually impossible to properly inspect material from other sources for drugs, currency and cutting-instruments." The response included a copy of Policy Statement 7300.42A dated June 29, 1970, stating in part (R. 35):

4. GUIDELINES

a. Publications, including books, should come directly from the publisher. Executive officers at the following institutions may authorize exceptions to this rule: Morgantown, Englewood, Ashland, Seagoville, Allenwood, Eglin, Montgomery, Safford and the Lompoc Camp.[2]

A current inventory of the inmate law library at Leavenworth was also attached.[3]

In addition to these reasons the administrative refusal of relief, see note 1, supra, stated that the books returned were reviewed and it was determined that they were text books using the selected cases method and were clearly "not adequate or useful in preparation of an actual case." The administrative response added that the existing inmate library contains all legal material considered necessary for preparation of Federal cases by Federal prisoners.

The traverse and other pleadings of Woods stated that the inmate library was "in pitiful shape—there are no Supreme Court Reporters earlier than 1970, books are missing in [Title 18 and 28 of the United States Code]" (R. 16); that respondent had not shown that there was a security problem; that in the past some Christmas packages have been allowed with a book enclosed; and the conclusory security statements by the answer were unsupported.

As stated, the trial court accepted the security reasons given, stating that with receipt of books from private sources, "[t]he inspection problems, considering the number of prisoners involved, would be immense." (R. 63). The appeal from this ruling presents two main issues, to which we now turn.

I

*The First Amendment claim*

First, Woods argues that the First Amendment rights of both the inmates and the senders of books are unjustifiably in-

---

1. The petition was first dismissed for lack of a showing of exhaustion of administrative remedies. A motion to reinstate the cause was filed, with attachments showing an earlier request and denial of administrative relief.

2. It is true, as Woods argues, that several varying statements were made by respondent as to whether there is an absolute prohibition on books coming from sources other than the publisher or merely a flexible rule. It seems clear it is a flexible general policy, but we do not feel that this weakens the respondent's position.

3. This inventory included, *inter alia*, Modern Criminal Procedure (West), Hall & Kamisar; Constitutional Rights of Prisoners, Palmer; Constitutional Law (3d ed. West), Lockhart, Kamisar and Choper; Criminal Law (West), Dix and Sharlot; Trials and Appeals (West), Karlen and Joiner; Constitutional Rights and Liberties (3d ed. West), Lockhart, Kamisar and Choper; Federal Jurisdiction (2d ed. West), Forrester, Currier and Moye; Federal Courts (2d ed. West), Wright; Criminal Law and Procedure (2d ed.), Hall and Mueller; Handbook on Criminal Procedure in the United States District Courts (West); Criminal Procedure under the Federal Rules, Orfeld; Federal Practice and Procedure (Vol. 2), Wright; Federal Court Rules Annotated (3d ed.) Parts 1 and 2; Title 18 U.S.Code Annotated; Title 28 U.S.Code Annotated (Sections 2241 to end); Black's Law Dictionary; Criminal Law Reporter.

The inventory also includes United States Supreme Court Reports, Vols. 91 to date; Federal Reporter, 2d, Vols. 452 to date; and Federal Supplement, Vols. 336 to date. The inventory was submitted as current with the answer and return filed November 19, 1974.

fringed by the banning of books not mailed from the publisher, and that the policy applied to him is therefore invalid, relying mainly on *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224.

■ While the outsider's interest in direct personal correspondence with inmates is not involved as it was in *Procunier,* see 416 U.S. at 408–09, 94 S.Ct. 1800, we must agree that the First Amendment rights are involved in the case before us.[4] The sender and the inmate have fundamental interests in the latter's access to the information in published material selected for delivery to him. See *Morgan v. LaVallee,* 526 F.2d 221, 224–25 (2d Cir.); *Aikens v. Lash,* 390 F.Supp. 663, 667 (N.D.Ind.). The trial court applied the demanding standard of *Procunier* (R. 63–64), and we too feel that it must be met.

Under *Procunier* standards, censorship of prisoner mail is justified only if the regulation furthers an important or substantial governmental interest unrelated to suppression of expression; it must further such a substantial interest in security, order, or rehabilitation; the limitation of First Amendment freedoms must be no greater than is necessary or essential to protection of the particular governmental interest involved; and the restriction will nevertheless be invalid if its sweep is unnecessarily broad. *Procunier,* supra, 416 U.S. at 413–14, 94 S.Ct. 1800.

■ We must agree with the trial court that this demanding standard is met. Leavenworth is a maximum security institution containing many dangerous inmates and any consideration of the penitentiary security regulations must be realistically made with these circumstances in mind.

*Daugherty v. Harris,* 476 F.2d 292, 294 (10th Cir.). The trial court pointed to the prison population of some 2,000 inmates.[5] There have been bizarre efforts to carry contraband. Id. at 294. The affidavit of the prison attorney referred to cards which were found to contain hacksaw blades and drugs concealed within the thick paper and to the difficulty of inspection of books (R. 34).

It is true that in the context of a large county jail similar restrictions have been held unnecessary, even for security reasons. *Cruz v. Hauck,* 515 F.2d 322, 333 (5th Cir.); and see *Cruz v. Hauck,* 475 F.2d 475 (5th Cir.). The court's view was that the rules should allow inmates to obtain legal materials from such sources as friends, subject only to screening for security purposes. 515 F.2d at 333. And we realize the regulation must not sweep too broadly, *Procunier,* supra, 416 U.S. at 413–14, 94 S.Ct. 1800, and that the less intrusive policy is favored where First Amendment rights are involved. Nevertheless, while the constitutional claim is not wholly insubstantial, when we consider the circumstances of the maximum security institution the size of Leavenworth, and the risks involved if searches of materials sent to such numbers of inmates should not detect contraband, we conclude that the policy in question is sustained by this record and is reasonable and valid under the standard we must apply.

We do feel, however, that further consideration should be given to one item of relief sought by Woods. Among other things, after first praying for an injunction against denial of any law books or legal material where there is no security problem presented by the physical characteristics of particular books sent to him, Woods further sought

4. The Supreme Court has made it clear that in *Procunier* it was thought unnecessary to assess the First Amendment rights of the inmates themselves, for it was reasoned that censorship of inmates' mail equally infringed the rights of non-inmates to whom the correspondence was addressed. See *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 756, 96 S.Ct. 1817, 48

L.Ed.2d 346; see also *Wolff v. McDonnell,* 418 U.S. 539, 575–76, 94 S.Ct. 2963, 41 L.Ed.2d 935.

5. The prison population is adult male, the majority of whom are 27 or older. The current operating capacity is 1,900 (See Federal System Facilities—1976, 11, a publication of the Federal Bureau of Prisons).

notification as to any particular books denied him on such grounds. See ¶ 8 in the prayer, reproduced in the margin.[6] While notice was there mentioned in a somewhat different context and on the assumption that the general ban on books from private sources would be held invalid, we feel we should further consider the notification request. For even assuming the policy is upheld, and books from sources other than publishers may be returned to the sender under the policy, notification would serve important purposes.

█ We feel that identification of particular publications sent to the inmate, but rejected under the policy, is itself of substantial importance and is information in which the inmate has a fundamental interest. This interest itself comes within the area protected by First Amendment principles. Furnishing notice of books rejected under the policy would not appear to be an unreasonable burden. Cf. *Procunier*, supra at 418–19, 94 S.Ct. 1800. Moreover, such notice would tend to insure even-handed application of the policy within reasonable limits, and would give sufficient information to the inmate so that he could request administrative exceptions or challenge allegedly arbitrary or unlawful application of the policy. See Id.; *Aikens v. Lash*, supra, 390 F.Supp. at 672.

There was, however, no hearing in the trial court and no focus on such a requirement of notice in the papers submitted to the court. We feel the parties should be afforded an opportunity to be heard on this point, by a hearing or other sufficient means to present suggestions, objections and proof on such a notice requirement, and that in this one respect the case should not have been dismissed.

From this record, it appears such notice of the books withheld under the policy may have been given directly to Woods, and provision for giving such notice may be agreeable to the respondent. In any event, with respect to this one claim for relief we vacate the dismissal and remand for further proceedings, affirming the judgment in all other respects.

## II

*The claims of invidious discrimination against indigents and of denial of access to the courts by the requirement of obtaining law books from the publisher*

█ Woods further argues that even assuming that the policy uniformly prohibits law books other than those sent from the original source, he is being discriminated against in violation of the Due Process Clause of the Fifth Amendment. He says that law books are commonly known to be expensive, particularly new ones, and that if he and others are compelled to purchase them from the publishers, there is an invidious discrimination on the basis of wealth, citing *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, and similar cases. And a further due process claim has been asserted by Woods that the policy applied to him bars access to the courts, relying on *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718, and *McCarty v. Woodson*, 465 F.2d 822 (10th Cir.), and similar cases.[7]

It is true that Woods is an indigent and his case has been prosecuted in forma pauperis. Moreover, his argument of unequal impact of the policy on indigents and those who can afford to purchase new law books

---

**6.** Among other things, Woods prayed for relief as follows (R. 9):

8. Further, if, after removal of the hard covers, or if the respondent is of the opinion that removal of the hard covers will not remove the security hazard, the petitioner is denied the law books or other legal materials, a written notification shall be given the petitioner setting forth the titles of the books

denied, and the reason why they present an insoluble security problem.

**7.** See the pro se Docketing Statement of Woods, p. 2. He there said that he had stated under oath that the non-availability of Supreme Court reporters that he needed prevented him from filing a petition for certiorari in relation to the conviction for which he is incarcerated.

from the publisher has some substance. See, *e. g., Gilmore v. Lynch,* 319 F.Supp. 105, 109 (N.D.Cal.), aff'd sub nom. *Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142. Nevertheless, we are persuaded that the economic effect is sufficiently remote and inconsequential here so that no denial of due process or substantial discrimination is shown. There is a substantial library available to the inmates, as the trial court pointed out (R. 62), and it includes books covering the constitutional and criminal law subjects of the books in question. See note 3, supra.

The case presented is thus not a substantial deprivation of access to legal materials as was the case in *Cruz v. Hauck,* supra, 475 F.2d 475, 476 n. 1 (5th Cir.). And we must again consider the security reasons which we feel are compelling in the circumstances of the maximum security institution involved. On the showing made we are persuaded that there is no denial of due process by any discrimination against indigents, nor any denial of access to the courts. The petitioner has not shown that his rights are infringed to such a degree that the justifications offered are inadequate and unreasonable. See *Gilmore v. Lynch,* supra, 319 F.Supp. at 109.

For these reasons we agree with the general conclusions of the trial court. As to all matters except the notice point discussed in Part I, the judgment is affirmed; as to the matter of notice of publications withheld under the policy, the judgment of dismissal is vacated and the case is remanded for further consideration as discussed herein.