**Guillermo GOMEZ**

v.

**D. MYERS, et al.**

**Civ. A. No. L-85-188-CA.**

United States District Court,
E.D. Texas,
Lufkin Division.

Nov. 12, 1985.

Richard S. Fischer, East Texas Legal Services, Nacogdoches, Tex., for plaintiff.

## ORDER

JUSTICE, Chief Judge.

Guillermo Gomez, an inmate at the Eastham Unit of the Texas Department of Corrections, filed this civil rights action under 42 U.S.C. § 1983 against state prison officials. Although the prisoner complaint form provided by the Eastern District of Texas is written in English, Gomez stated his claims and requested relief in Spanish. He apparently alleges denial of access both to the courts and to medical care based on a language barrier. Because his pleading in Spanish raises the issue of whether non-English speaking prisoners can gain meaningful access to the courts, the court grants his application to proceed *in forma pauperis* and will appoint *Richard S.*

*Fischer,* Esquire, to represent Gomez in his § 1983 action.

### I. The Filing of the Complaint

The Clerk of the United States District Court for the Eastern District of Texas originally received the complaint of Gomez on August 26, 1985. In a letter to Gomez, the *pro se* deputy clerk noted that the form was written in both English and Spanish and asked whether Gomez could complete the entire form in English.[1] A fellow prisoner who had interpreted and prepared the form responded that Gomez could not complete the form in English nor could the letter writer assist Gomez in preparing his complaint in the English language.[2] The clerk filed the complaint, as originally written, on September 30, 1985.

Neither statutes nor administrative rules provide guidance on whether pleadings must be written in English. While no statute explicitly permits the filing of pleadings written in languages besides English, there also is no federal statute requiring pleadings to be written in English. And the Eastern District of Texas has not adopted a local rule requiring pleadings to be in English or accompanied by an English translation. When an issue is not covered by a rule, the district courts are to regulate their practice in any manner not inconsistent with the Federal Rules of Civil Procedure or local rules. FED.R.CIV.P. 83. The Clerk's acceptance of the complaint of Gomez was permissible, since that action is not inconsistent with any federal or local rule.

---

1. Specifically, the letter asked:
 Did you prepare this form?
 Are you able to complete the forms in English so they can be read by the court?
 If you completed the forms through an interpreter, did this person explain to you each of the questions and explain to you what it means to sign under penalty of perjury that the information you have given is true and correct? Letter from Katheryn Hetherly, Deputy U.S. District Clerk, to Guillermo Gomez (September 12, 1985).

2. According to the English-speaking inmate, "any words written in the English language

found in the Form and/or Complaint are my mistakes." Letter from Jesse Avila Valles and Guillermo Gomez to Katheryn Hetherly (September 14, 1985). The prisoners wrote that Gomez did not prepare the form, could not complete the form in English, and had the penalty of perjury interpreted for him by Valles. "Your letter and this letter was interpretered (sic) to Mr. Gomez by me (Valles) and his signature will ap[p]ear below. I am sorry to say that I can not assist Mr. Gomez in preparing this complaint in the English language." *Id.*

■ More important, the constitutional right of prisoners to access to the courts mandated the acceptance of the pleading in Spanish.[3] Gomez apparently could not personally draft a complaint in the English language and could not afford to pay someone else to provide him an English translation. The Supreme Court has eliminated several costs and requirements for filing complaints, appeals, and habeas corpus petitions when financial obstacles prevented indigent prisoners from exercising a constitutional right. *See Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (state may not deny access to divorce courts solely because of inability to pay); *Smith v. Bennett*, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961) (state must waive filing fee when indigent prisoner sues for his liberty under the Great Writ); *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (state must provide trial transcripts to prisoners unable to pay for them). A requirement that pleadings be written in English would impose a cost on the indigent prisoner similar to a filing fee, service of process, or transcript.

Moreover, the Supreme Court has expressed concern for regulations that deprive illiterate prisoners of access to the courts. For example, in invalidating a state regulation prohibiting the assistance of jail-house lawyers, the Supreme Court noted that "Tennessee could not constitutionally adopt and enforce a rule forbidding illiterate or poorly educated prisoners to file habeas corpus petitions. But Tennessee had adopted a rule which, in the absence of any other source of assistance, effectively does just that." *Johnson v. Avery*, 393 U.S. 483, 487, 89 S.Ct. 747, 749, 21 L.Ed.2d 718 (1969). Similarly, the Court opposed the dilution of the constitutional rights of "totally or functionally illiterate" inmates who could not articulate their complaints to the courts. *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974). *Cf. Cruz v. Hauck*, 627 F.2d 710, 721 (5th Cir.1980) (advising trial court to consider whether assistance of legally trained persons was required since library books cannot provide access for those prisoners who do not read and write in English). Just as the rules in *Johnson* and *Wolff* and facilities in *Cruz* may have denied prisoners access to the courts because of their inability to read and write English, a rule forbidding complaints in Spanish would deny access because of illiteracy in the English language. To require all prisoners to file a complaint in English would prevent the filing of any complaint by an indigent, non-English speaking prisoner who has no assistance in drafting his complaint. As a result, an all-English rule would deny prisoners literate in another language, but illiterate in English, the right to seek redress for possible constitutional violations.

■ If the Clerk had deprived Gomez of his constitutional right of access to the courts by refusing to file his pleading, the Clerk might have been liable under § 1983.[4] The Court of Appeals for the Fourth Circuit, for example, has found a court clerk liable under § 1983 for impeding the filing of a prisoner petition for state post-conviction relief. *McCray v. Maryland*, 456 F.2d 1 (4th Cir.1972). Although Gomez filed a civil rights action, the Supreme Court no longer distinguishes between civil rights

---

**3.** For the purpose of deciding the right of Gomez to file his complaint in Spanish, it is assumed that he did not have available any person who could translate the complaint from Spanish to English.

**4.** Although some circuits apparently grant clerks absolute immunity for the filing of documents, *see Davis v. McAteer*, 431 F.2d 81, 82 (8th Cir.1970), the Fifth Circuit extends only a qualified immunity to clerks of courts for performing routine functions, such as forwarding copies of transcripts, providing copies of other state actions, or entering an order and notifying the parties. *Williams v. Wood*, 612 F.2d 982, 984–85 (5th Cir.1980). A clerk, however, does have a defense of judicial immunity when carrying out a clerical function explicitly commanded by a court decree or a judge's instructions. *Id.* at 985. *See also Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir.) (prothonotary who at the direction of the court refused to accept certain papers for filing was wrapped in the cloak of immunity), *cert. denied*, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969).

actions and habeas corpus petitions when assessing the adequacy of prisoners' right of access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 827, 97 S.Ct. 1491, 1497, 52 L.Ed.2d 72 (1977) (considering what sources of legal knowledge must be provided prisoners who seek release from confinement or vindication of fundamental civil rights); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (extending to civil rights actions the standard used in habeas corpus actions for determining the adequacy of legal assistance). *See also Andrade v. Hauck,* 452 F.2d 1071 (5th Cir.1971) (access of prisoners to courts encompasses both habeas corpus petitions and civil rights actions). When considered in conjunction with those decisions, the *McCray* opinion suggests that a court clerk would also be liable for impeding the filing of a prisoner's civil rights complaint. *Cf. Williams v. Wood,* 612 F.2d 982 (5th Cir.1980) (allegations that deputy clerk failed to notify party of entry of final judgment stated a claim under § 1983). As the Fourth Circuit stated: "Of what avail is it to the individual to arm him with a panoply of constitutional rights if, when he seeks to vindicate them, the courtroom door can be hermetically sealed against him by a functionary who, by refusal or neglect, impeded the filing of his papers?" *McCray,* 456 F.2d at 6.

## II. The Cost of Translation

Although this § 1983 action has been filed, the complaint has not been translated or served on defendants. The obstacle to Gomez proceeding with prosecution of his claim is determining who, if anyone, should pay for the costs of translating the complaint and other pleadings.

None of the parties at this time appears liable for payment of costs. By filing his complaint in Spanish and applying to proceed *in forma pauperis,* Gomez maintains that he cannot afford translation costs. The defendants or their employer, the State of Texas, likewise cannot be expected at this point in the proceedings to pay the cost of translating the claims against them. It would be unfair and a violation of due process to order a defendant in a civil action to pay the plaintiff's litigation costs without affording the defendant an opportunity to oppose their imposition. Otherwise, defendants would be penalized for being sued by indigent, non-English speaking plaintiffs regardless of the merits of the claim.

■ There is no statutory provision or federal rule authorizing the United States government to pay for the costs of translation in a civil action between private parties. The Court Interpreters Act provides for an interpreter "in any criminal or civil action initiated by the United States in a United States district court (including a petition for writ of habeas corpus initiated in the name of the United States by a relator)." 28 U.S.C. § 1827(d). The Act does not authorize an interpreter in a civil rights action initiated by an indigent state prisoner. The Criminal Justice Act permits counsel for indigent defendants to request experts or other services necessary for an adequate defense, 18 U.S.C. § 3006A(e), but Gomez is not defending against a federal criminal charge. The statutory provision allowing proceedings *in forma pauperis* authorizes the court to direct payment only for the expenses of preparing a transcript, 28 U.S.C. § 1915(b), printing a record on appeal, *id.,* or serving process, § 1915(c). And courts have restricted the meaning of "fees and costs" which may be waived under § 1915(a) to the ordinary fees and charges of officers of the court, *McClure v. Salvation Army,* 51 F.R.D. 215, 216 (N.D.Ga.1971), which does not include the cost of translation.[5] The Civil Rights Attorney's Fees Awards Act of

---

5. If an attorney is appointed to represent a plaintiff proceeding *in forma pauperis,* the attorney is expected to bear the costs of litigation, which presumably includes the costs of interpretation and translation. *See Moss v. ITT Continental Baking Co.,* 83 F.R.D. 624 (E.D.Va.1979).

After completion of the litigation, however, an attorney who represents the prevailing party may be reimbursed for litigation costs and be awarded reasonable attorney's fees under 42 U.S.C. § 1988.

1976, 42 U.S.C. § 1988, also offers no help for payment of costs prior to a judgment since a party must prevail before receiving a fee under it. Finally, Rule 43(f) of the Federal Rules of Civil Procedure provides for the appointment of an interpreter at trial, but fails to extend that authority to pre-trial preparation. Therefore, in absence of statutory authority, the Clerk cannot be ordered to pay for the costs of translating pleadings from a foreign language to the English language.

While no one at this time appears liable for the costs of translation, the right of Gomez to file his complaint is meaningless without the means to translate it into English. *Cf. Morrow v. Harwell,* 768 F.2d 619, 623 (5th Cir.1985) ("The inmates' ability to file is not dispositive of the access question .... [R]ight of access includes the ability to file a legally sufficient claim."). Defendants have no notice of the charges against them and cannot be expected to answer the complaint. Moreover, the court has no way of evaluating the seriousness of his particular claims, which is essential to determining whether counsel should be appointed to represent him. Assuming the initial hurdle of translating the complaint were overcome, there remains the problem of conducting litigation between parties who do not speak the same language. Other pleadings, requests for discovery, and motions must be translated, and testimony of witnesses must be interpreted. These difficulties facing Gomez demonstrate that his complaint, written primarily in Spanish, raises an important issue about the contours of the constitutional rights of prisoners to access to the courts that reach beyond the question of filing and translating an initial pleading. The resolution of these initial obstacles would only lead to other questions which are fundamentally the same: Is Gomez' constitutional right of access to courts being abridged?

III. The Constitutional Right of Access to the Courts

Access to the courts has been defined as "all the means a defendant or petitioner might require to get a fair hearing from the judiciary on all charges brought against him or grievances alleged by him." *Gilmore v. Lynch,* 319 F.Supp. 105, 111 (N.D.Cal.1970), *aff'd, Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971) *(per curiam).* The right was first recognized when the Supreme Court invalidated a state regulation prohibiting prisoners from filing habeas corpus petitions unless a state legal investigator found they were properly drawn. *Ex Parte Hull,* 312 U.S. 546, 549, 61 S.Ct. 640, 641, 85 L.Ed. 1034 (1941). The Court has not only struck down regulations that limited the access of prisoners to the courts, but it has also imposed affirmative obligations on states to provide reasonable alternatives for assisting prisoners. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). In its most recent pronouncement, the Court held that the fundamental constitutional right of access required prison officials to provide either adequate law libraries or adequate assistance from persons trained in the law. *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977).

The Fifth Circuit discerns three bases in the Constitution for the right of access to courts—the privileges and immunities clause in article four, the right to petition for redress of grievances under the first amendment, and the right to due process under the fourteenth amendment. *Ryland v. Shapiro,* 708 F.2d 967, 972 (5th Cir. 1983). Although the prisoner access to court cases generally rely on due process guarantees, *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974), the Court has relied on the equal protection clause to eliminate filing fees that discriminate between rich and poor prisoners. *Smith v. Bennett,* 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961). *See also Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972) (prerequisite of a double bond to appeal an administrative decision discriminates against the poor in violation of equal protection of the laws). Under any of these theories, the

prisoner's right of access must be weighed against the government's interest in order, security, and rehabilitation. *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).

When non-English speaking prisoners have asserted a denial of access to courts based on a language barrier, the reported cases have dealt with the claim in a perfunctory manner. *See Pabon v. McIntosh*, 546 F.Supp. 1328, 1339 n. 15 (E.D.Pa.1982) (considering moot Spanish-speaking inmates' claim of denial of access to the courts); *United States ex rel. Wolfish v. Levi*, 439 F.Supp. 114, 162 (S.D.N.Y.1977) (dismissing complaints related to language problems when one-fourth of the prison staff spoke Spanish and there was no showing of prejudice), *modified on other grounds*, 573 F.2d 118 (2d Cir.1978), *rev'd sub nom. Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Some courts have noted, but not separately considered, the problems that Spanish-speaking inmates must encounter in conducting legal research. *See Ramos v. Lamm*, 639 F.2d 559, 584 n.29 (10th Cir.1980) (evidence that inmate library clerks knew how to use law library books does not show that they could help prisoners unable to speak, read, or write in English), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). *Hooks v. Wainwright*, 536 F.Supp. 1330, 1344 n. 24 (M.D.Fla.1982) (Spanish-speaking inmates who attempt to read a law book must try to read a book written in a foreign language). More often, the constitutional rights of Spanish-speaking prisoners arises in contexts other than access to courts. *See, e.g., Pabon v. McIntosh*, 546 F.Supp. 1328, 1335–41 (E.D.Pa.1982) (no constitutional violations when prison officials allowed only one banquet per year for each inmate group and did not provide a

bilingual program of education); *Powell v. Ward*, 487 F.Supp. 917, 932 (S.D.N.Y.1980) (due process requires that Spanish-speaking inmates who cannot understand English must be provided notice and statements in Spanish at disciplinary hearings), *modified on other grounds*, 643 F.2d 924 (2d Cir.), *cert. denied*, 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981); *Ramos v. Lamm*, 485 F.Supp. 122, 164 (D.Colo.1979) (striking down policy of refusing to deliver mail written in language other than English when one-third of prison population is Hispanic), *aff'd in part and rev'd in part on other grounds*, 639 F.2d 559 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981).

But the Fifth Circuit in two cases has discussed the problem of access of non-English speaking prisoners. In a post-*Bounds* case challenging the adequacy of access provided inmates of the Bexar County, Texas jail, the central question was whether the facility enabled prisoners to fairly present their complaints to a district court. *Cruz v. Hauck*, 627 F.2d 710 (5th Cir.1980). The Fifth Circuit instructed the district judge on remand to consider the plaintiff's contention that inmates without skills to use a law library might need the assistance of persons trained in the law.[6] *Id.* at 721.

Although *Bounds* says that either an adequate law library *or* assistance from persons trained in the law may satisfy the fundamental constitutional right to access to the courts, the fundamental concern is still whether the inmates have *meaningful* access to the courts. Library books, even if "adequate" in number, cannot provide access to the courts for those persons who do not speak English or who are illiterate.

---

**6.** Prior to the opinion discussed in the text, the Supreme Court considered the case once and the Fifth Circuit considered it three times. *See Cruz v. Hauck*, 404 U.S. 59, 92 S.Ct. 313, 30 L.Ed.2d 217 (1971) (granting motion to proceed *in forma pauperis* and vacating judgment in light of *Younger v. Gilmore*); *Cruz v. Hauck*, 515 F.2d 322 (5th Cir.1975) (remanding to determine whether all inmates have adequate access

through means other than legal materials), *cert. denied sub nom. Andrade v. Hauck*, 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976); *Cruz v. Hauck*, 475 F.2d 475 (5th Cir.1973) (remanding for evidentiary hearing on prisoners' objections to jail rules and the government's justification for those rules); *Cruz v. Hauck*, Misc. No. 1964 (5th Cir. Feb. 1, 1971).

*Id.* (emphasis in original). *See also Morrow v. Harwell,* 768 F.2d 619 (5th Cir.1985) (noting that *Cruz* dicta suggests that a library may not satisfy the constitutional rights of inmates who cannot read English). Dicta in both cases indicate that the right of access of non-English-speaking prisoners is an issue that merits consideration.

IV. Appointment of Counsel

 No right to counsel exists in § 1983 actions. *Hardwick v. Ault,* 517 F.2d 295, 298 (5th Cir.1975). Generally, appointment of counsel in an *in forma pauperis* proceeding will not be granted unless an attorney is needed to present meritorious issues. *Lopez v. Reyes,* 692 F.2d 15 (5th Cir.1982). Yet, a complaint in Spanish obscures the merit of the substantive claims, at least for those persons who cannot read Spanish. The dearth of litigation over the access of non-English speaking prisoners to courts, however, shows that the specific claims in the complaint are irrelevant to the determination of the seriousness of the complaint. The complaint on its face raises a non-frivolous issue: whether indigent, non-English speaking prisoners in Texas have meaningful access to courts. *See Cruz v. Hauck,* 627 F.2d 710 (5th Cir.1980) (meaningful access for inmates who do not speak English may include paralegal and paralibrarian assistance). *Cf. Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (state cannot adopt a rule that effectively denies the illiterate and uneducated the ability to file a petition for habeas corpus).

 A district court has the discretion to appoint counsel in a civil rights action if the case presents exceptional circumstances. *Branch v. Cole,* 686 F.2d 264, 265 (5th Cir.1982). The two factors that determine the existence of exceptional circumstances are the type and complexity of the case and the abilities of the individual bringing it. *Id.* at 266. An evaluation of those factors shows that this action merits the appointment of counsel. The claim of Gomez raises questions about the denial of fundamental constitutional rights under the first and fourteenth amendments, a labyrinthian area of the law. The absence of direct precedent on access problems of non-English speaking prisoners suggests that an experienced advocate is needed to articulate the claim. And with a substantial number of Hispanic persons in Texas prisons, the issue may have implications beyond the individual problems of Gomez.[7] Gomez may be one of many prisoners who need more than bound volumes of federal reporters to obtain access to the courts. Finally, given the communication barriers that Gomez has faced in presenting his claims, an attorney is needed to represent the Spanish-speaking litigant and provide the court the benefits of an adversary proceeding.

In view of the foregoing, it is

ORDERED that plaintiff's application to proceed *in forma pauperis* shall be, and it is hereby, GRANTED and that the costs of litigating his claim be handled according to the usual procedure for *in forma pauperis* proceedings. It is further

ORDERED that Richard S. Fischer, Esquire, be appointed to represent Gomez in this § 1983 action.

7. In 1983, nearly nineteen percent. of the 36,769 prisoners in Texas were Mexican-Americans. TEX. DEPT. OF CORRECTIONS ANN. REP.— FY 1983, at vi. The annual report does not contain statistics on the number of non-English speaking prisoners in Texas.