Christopher D. BROWN, et
al., Plaintiffs,

v.

Donald MANNING, et al., Defendants.

No. C-83-561-JLQ.

United States District Court,
E.D. Washington.

March 6, 1985.

D. Roger Reed, Spokane, Wash., for
plaintiffs.

David Saraceno, Deputy Pros. Atty., Spo-
kane, Wash., for defendants.

MEMORANDUM AND ORDER

QUACKENBUSH, District Judge.

BACKGROUND

This civil rights action (42 U.S.C. § 1983)
for injunctive and declaratory relief was
initiated by several *pro se* prisoners in the
Spokane County Jail, proceeding *in forma
pauperis*. Defendants are Spokane Coun-
ty, the county commissioners and captain
of the jail, sued in their official capacities.

Plaintiffs contend defendants have denied them meaningful access to the courts by failing to assist prisoners at the county jail with the preparation and filing of writs of habeas corpus or civil rights complaints. This denial is assertedly manifested by the failure to provide inmates with an adequate law library or with assistance from persons trained in the law.

After appointment of counsel, the parties stipulated to certifying the cause as a class action under Fed.R.Civ.P. 23(b)(2). The court independently reviewed and ordered certification of the class defined as:

> All persons who are, or who will be in the future, incarcerated in the Spokane County Jail who have been denied their constitutional right to meaningful access to the courts in civil matters involving their basic constitutional rights, by either failing to provide such incarcerated persons with an adequate law library or with adequate assistance from persons trained in the law to assist incarcerated persons in the preparation and filing of meaningful legal papers for a civil action (42 U.S.C. § 1983 or habeas corpus petitions).

Soon after, plaintiff moved for summary judgment. In this court's Memorandum Order, Ct.Rec. 52, it was concluded that the seven out-dated and unsupplemented volumes of the Revised Code of Washington were patently inadequate to satisfy the right of meaningful court access and that no law library exists at the Spokane County Jail. Accordingly, plaintiff's motion was granted to this extent. However, since a law library is but one method meeting the constitutional requirement of providing access, this court found remaining material factual questions over the availability of trained personnel through the Public Defender's Office, Spokane Legal Services, Gonzaga University Legal Clinic, and private practitioners to assist the jail prisoners and whether an adequate referral policy exists to afford the class meaningful access to the courts. Since then, the parties have filed an agreed pretrial order setting forth additional admitted facts.

Defendants now concede unavailability of legal personnel to assist prisoners housed at the County Jail and unavailability of a referral policy. The stipulated facts permit this court to now rule upon the remaining issues, and this Memorandum and Order shall serve as the Opinion of the court. As more fully discussed *infra,* the court now grants plaintiff's motion for summary judgment, concluding as a matter of law that prisoners housed at the jail for more than a few days are entitled either to an adequate legal library or adequate legal assistance, neither of which has been provided. Presently, it is Spokane County's position that prisoners housed at this county's jail are not entitled to a legal library or assistance.

Moreover, the parties have stipulated to a proposed remedy to be implemented in the event plaintiffs receive an ultimate determination in their favor. As set forth more fully in the Agreed Pretrial Order, Spokane County agrees to compensate two legal interns, to be supervised by a member of the faculty from the Gonzaga University School of Law, for a total of 40 hours per week, to investigate inmate complaints and to prepare appropriate pleadings. The law school also will serve as the agency providing support staff, telephones, and supplies.

## ADMITTED FACTS

1. On July 12, 1983, one of the class representatives, Christopher D. Brown, incarcerated in the Spokane County Jail, requested use of the Spokane County Jail Law Library. Mr. Brown desired to use the library for research of a civil rights complaint (to be brought pursuant to 42 U.S.C. § 1983). (*See* Supplemental Aff. of C. Brown). After making such a request, Mr. Brown was told by jail staff the following:

(a) The jail law library was only open on Tuesdays. This applied to all of the approximately three hundred fifteen (315) incarcerated persons in the Spokane County Jail.

(b) The Spokane County Jail Law Library consisted only of seven (7) volumes

of the Revised Code of Washington, which were out of date and unsupplemented. The volumes concerning crime and punishment were missing.

(c) The RCWs were located in the same library used by the inmates for reading non-legal books and magazines.

(d) There was no special table space allocated to prisoners wishing to use the legal materials. The tables in the library were stacked up with magazines and other books.

(e) All prisoners incarcerated in the Spokane County Jail, including Mr. Brown, could not check out any legal materials from the law library.

(f) No pens, paper, carbon paper or typewriters were available free of charge to any incarcerated person in the Spokane County Jail.

2. Mr. Brown spoke with his public defender and asked her to assist him with the preparation of a civil rights pleading. He was told that the public defender could not assist inmates with the filing and preparation of civil rights complaint brought pursuant to 42 U.S.C. § 1983.

3. Upon information and belief, Mr. Brown found that there was no other legal service agency available to any incarcerated person in the Spokane County Jail to assist inmates in the preparation and filing of legal papers and pleadings and writs of habeas corpus and civil rights actions brought pursuant to 42 U.S.C. § 1983.

4. As a result of being denied adequate access to the courts, either from the failure of the county to provide an adequate legal library or from the failure of the county to provide adequate assistance from persons trained in the law, the individually-named plaintiffs, including Mr. Brown, were damages, injured and materially prejudiced, in that they were unable to properly prepare, support and file civil rights actions pursuant to 42 U.S.C. and writs of habeas corpus.

5. The provision of adequate legal materials or adequate legal assistance to incarcerated persons in the Spokane County Jail for assistance in the preparation and filing of civil rights (42 U.S.C. § 1983) actions and writs of habeas corpus is as Mr. Brown describes. The Spokane County Jail Law Library includes only seven (7) volumes of the Revised Code of Washington, unsupplemented and out of date.

6. With the exception of seven (7) R.C.W.s unsupplemented and out of date, Spokane County has not been providing law books, law periodicals or any law library aids whatsoever to incarcerated persons in the Spokane County Jail.

7. Furthermore, there is no law firm, public agency, entity or person that is currently and actively providing any legal assistance to incarcerated persons in the Spokane County Jail in the counseling, preparing and filing writs of habeas corpus and/or civil rights actions (42 U.S.C. 1983). The only entities providing legal assistance to indigent inmates are the Spokane County Public Defender, Spokane Legal Services and Gonzaga University Legal Assistance.

8. The Spokane County Public Defender does not have the statutory authority, nor does it provide assistance to incarcerated persons in the Spokane County Jail in the preparation and filing of writs of habeas corpus or civil rights actions brought pursuant to 42 U.S.C. § ]983. The only writ of habeas corpus ever prepared by the Spokane County Public Defenders Office was one done in conjunction with the criminal charge for which the inmate was incarcerated. Other than the one writ of habeas corpus, the Spokane County Public Defender has not ever provided legal assistance to incarcerated persons in the Spokane County Jail for the preparation and filing of writs of habeas corpus and/or civil rights actions brought pursuant to 42 U.S.C. § 1983.

9. Both Gonzaga University Legal Assistance and Spokane Legal Services do not provide assistance to incarcerated persons in the Spokane County Jail for the preparation and filing of civil rights actions brought pursuant to 42 U.S.C. § 1983 and

writs of habeas corpus. This is because neither entity has the funding nor the authority to provide such assistance. These entities do not, in fact, provide this assistance to incarcerated persons in the Spokane County Jail.

10. The defendants, on their own, do not provide either an adequate law library or adequate persons trained in the law to assist incarcerated persons in the Spokane County Jail with the preparation and filing of writs of habeas corpus or civil rights actions pursuant to 42 U.S.C. § 1983.

11. The category of, status of, special prisoner population of, length of stay of, and other prisoner population statistics of inmates housed in the Spokane County Jail, can be more particularly described in the tables attached as an Addendum and incorporated by reference. These statistics, which are stipulated facts of this case, represent a synopsis of records produced by the county pursuant to discovery requests or were exhibits produced pursuant to depositions and subpoenas. While further reference should be given to the attached tables, what follows immediately below is an outline of certain stipulated facts of this case regarding the population statistics of the Spokane County Jail. Generally, the Spokane Jail houses a number of federal, state and county prisoners.

(a) The Spokane County Jail houses a number of *federal* prisoners.

1. In 1983, the number of inmates booked into the Spokane County Jail from the United States Navy totaled nineteen (19). The total days of incarceration was thirty-seven (37). The average number of days of incarceration was one and $9/10$ (1.9).

2. In 1983, the number of inmates booked into the Spokane County Jail from the United States Marines totaled one (1). The total days of incarceration was one (1). The average number of days of incarceration was one (1).

3. In 1983, the number of inmates booked into the Spokane County Jail from the U.S. Immigration totaled two hundred six (206). The total days of incarceration was seven hundred thirty-seven (737). The average number of days of incarceration was three and $6/10$ (3.6).

4. In 1983, the number of inmates booked into the Spokane County Jail from the United States Army totaled fifteen (15). The total days of incarceration was twenty-three (23). The average number of days of incarceration was one and $5/10$ (1.5).

5. In 1983, the number of inmates booked into the Spokane County Jail from the United States Marshal totaled one hundred thirty-five (135). The total days of incarceration was six thousand two hundred eighteen (6,218). The average number of days of incarceration was forty-six and $1/10$ (46.1).

6. In 1983, the number of inmates booked into the Spokane County Jail from the federal prisons totaled two (2). The total days of incarceration was four (4). The average number of days of incarceration was two (2).

7. In 1983, the number of inmates booked into the Spokane County Jail from the Federal Work Release totaled twelve (12). The total days of incarceration was seven hundred thirty-six (736). The average number of days of incarceration was sixty-one and $3/10$ (61.3).

(b) The Spokane County Jail also houses a number of *state* prisoners:

1. In 1983, the number of inmates booked into the Spokane County Jail from the Department of Social and Health Services Special Investigation totaled thirty-seven (37). The total days of incarceration was one hundred two (102). The average number of days of incarceration was two and $8/10$ (2.8).

2. In 1983, the number of inmates booked into the Spokane County Jail from the Employment Security Department totaled seventeen (17). The total days of incarceration was twenty-seven (27). The average number of days of incarceration was one and $6/10$ (1.6).

3. In 1983, the number of inmates booked into the Spokane County Jail

from the State Park Ranger totaled two (2). The total days of incarceration was ten (10). The average number of days of incarceration was five (5).

4. In 1983, the number of inmates booked into the Spokane County Jail from the State Work Release totaled ninety-seven (97). The total days of incarceration was six thousand five hundred six (6,506). The average number of days of incarceration was sixty-seven and 8/10 (67.8).

5. In 1983, the number of inmates booked into the Spokane County Jail from the State Probation totaled four hundred fifteen (415). The total days of incarceration was nineteen thousand seven hundred forty-seven (19,747). The average number of days of incarceration was forty-seven and 6/10 (47.6).

6. In 1983, the number of inmates booked into the Spokane County Jail from the Washington State Fish and Game totaled twenty-four (24). The total days of incarceration was thirty-eight (38). The average number of days of incarceration was one and 6/10 (1.6).

7. In 1983, the number of inmates booked into the Spokane County Jail from other State Military totaled two (2). The total days of incarceration was six (6). The average number of days of incarceration was three (3).

8. In 1983, the number of inmates booked into the Spokane County Jail from "Other State" totaled thirty-six (36). The total days of incarceration was fifty-six (56). The average number of days of incarceration was one and 6/10 (1.6).

9. In 1983, the number of inmates booked into the Spokane County Jail from the Pine Lodge Detention Facility totaled thirty-one (31). The total days of incarceration was nine hundred five (905). The average number of days of incarceration was twenty-nine and 2/10 (29.2).

10. In 1983, the number of inmates booked into the Spokane County Jail from the Washington State Institutions totaled twenty-one (21). The total days of incarceration was three hundred thirty-two (332). The average number of days of incarceration was fifteen and 8/10 (15.8).

11. In 1983, the number of inmates booked into the Spokane County Jail from the Washington State Liquor Control Board totaled seven (7). The total days of incarceration was sixty-nine (69). The average number of days of incarceration was nine and 9/10 (9.9).

12. In 1983, the number of inmates booked into the Spokane County Jail from the State Parole totaled two hundred forty-nine (249). The total days of incarceration was twelve thousand seven hundred seventy-one (12,771). The average number of days of incarceration was fifty-one and 3/10 (51.3).

(c) The following statistics are stipulated facts concerning the minimum and maximum number of 1983 post-conviction and pre-conviction prisoners incarcerated on a *per day* basis in the Spokane County Jail.

*Pre-conviction:*

1. In 1983, preconviction felons incarcerated in the Spokane County Jail numbered a minimum of forty-two (42) per day and a maximum of one hundred thirty-three (133) per day.

2. In 1983, the pre-conviction misdemeanants incarcerated in the Spokane County Jail numbered a minimum of three (3) per day and a maximum of sixty (60) per day.

3. In 1983, the pre-conviction "Driving While Intoxicated" offenders incarcerated in the Spokane County Jail numbered a minimum of zero (0) per day and a maximum of twenty-five (25) per day.

4. In 1983, the pre-conviction traffic offenders incarcerated in the Spokane County Jail numbered a minimum of zero (0) per day and a maximum of twenty-three (23) per day.

5. In 1983, the "Other Local" offenders incarcerated in the Spokane County Jail numbered a minimum of zero (0)

per day and a maximum of eighteen (18) per day.

*Post-conviction:*

1. In 1983, the post-conviction felons incarcerated in the Spokane County Jail numbered a minimum of thirty-nine (39) per day and a maximum of one hundred fourteen (114) per day.

2. In 1983, the number of post-conviction misdemeanants incarcerated in the Spokane County Jail numbered a minimum of zero (0) per day and a maximum of sixty-three (63) per day.

3. In 1983, the post-conviction "Driving While Intoxicated" offenders incarcerated in the Spokane County Jail numbered a minimum of zero (0) per day and a maximum of thirty-five (35) per day.

4. In 1983, the post-conviction traffic offenders incarcerated in the Spokane County Jail numbered a minimum of zero (0) per day and a maximum of twenty-seven (27) per day.

5. In 1983, the post-conviction "Other Local" offenders incarcerated in the Spokane County Jail numbered a minimum of zero (0) per day and a maximum of nineteen (19) per day.

12. The statistics in Exhibit 1G are stipulated to by the parties and concern the length of incarceration (1 hour to 4 + weeks) of Spokane County Jail inmates on a per month basis for the years 1983 and 1984.

13. Spokane County is currently constructing a new five hundred thirty (530) bed correctional facility to be completed in 1985, hereinafter referred to as the new Spokane County Jail. The new Spokane County Jail will provide approximately fifteen (15) beds for the housing of federal prisoners sentenced to federal institutions. The new Spokane County Jail will provide at least one hundred (100) beds for housing of state prisoners sentenced to state institutions.

14. The new Spokane County Jail does not plan for, budget for, nor provide for either adequate access to a law library or adequate access to persons trained in the law to assist incarcerated persons in the preparation and filing of writs of habeas corpus or civil rights actions brought pursuant to 42 U.S.C. § 1983.

15. Due to the enactment of Washington State's new sentencing guidelines (*see* 1984 Wash.Legis.Serv. Ch. 209, House Bill 1247, p. 1608, effective July, 1984), state prisoners may now be sentenced to serve their sentences in county jail institutions. State Prisoners are those convicted to serve over three hundred sixty-five (365) consecutive days under the new sentencing guidelines. As a result, county jails will now be housing persons who have been convicted to serve sentences of over three hundred sixty-five (365) consecutive days.

## FUNDAMENTAL CONSTITUTIONAL RIGHT

■ In sum, the stipulated facts demonstrate that under the United States Constitution, Spokane County has an affirmative duty to furnish indigent persons imprisoned at the county jail for more than three (3) days with an adequate law library or access to persons trained in the law to assist in the preparation and filing of civil rights complaints and habeas petitions.

As discussed in this court's Order of August 1, 1984, Ct.Rec. 52, in *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977), the Supreme Court unequivocally held "that the *fundamental constitutional right of access* to the courts requires prison authorities to assist inmates in the preparation of filing of *meaningful* legal papers by providing prisoners with *adequate* law libraries or adequate assistance from persons trained in the law." Emphasis added. While the "source" of this constitutional access is unclear, *Bounds*, 430 U.S. at 817, 97 S.Ct. at 1491 (Burger, C.J., dissenting), the high Court apparently interpreted this fundamental right as emanating from the Due Process and Equal Protection clauses of the Fourteenth Amendment. *See Bounds*, 430 U.S. at 817, 821, 97 S.Ct. at 1491, 1494 (affirming circuit decision which utilized

the district court determination "in all respects save one ...").

Preliminarily, defendants contend plaintiffs have not alleged denial of access for habeas petitions or civil rights complaints. This is incorrect as demonstrated by admitted Fact 1.

■ Second, defendants propose that the issue is "moot" since the class representatives are no longer imprisoned at Spokane County Jail. However, transfer of the individually-named plaintiffs, after class certification, does not necessarily render an action moot, and defendants have not set forth reasons or a factual basis for this court to conclude otherwise. See, generally, *e.g., Workman v. Mitchell,* 502 F.2d 1201 (9th Cir.1974).

Next, and more fundamentally, defendants maintain *Bounds* does not apply to "local" jails. This notion is rejected for two reasons. First, while the *Bounds* majority spoke of the "State", it nevertheless accorded persuasive weight to *Cruz v. Hauck,* 404 U.S. 59, 92 S.Ct. 313, 30 L.Ed.2d 217 (1971). *Bounds v. Smith,* 430 U.S. at 829, 97 S.Ct. at 1498. In *Cruz,* the judgment that civil legal materials need not be supplied to county jail prisoners was vacated and remanded to the Fifth Circuit for reconsideration in light of caselaw holding, as a constitutional proposition, that access to the courts may not be impeded when a prisoner sought collateral attack of his conviction. See, generally, *Gilmore v. Lynch,* 319 F.Supp. 105 (N.D.Cal.1970); *aff'g sub nom., Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971); *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). On remand, the Fifth Circuit opined "the functions served by county jails as a state penal system should be taken into account in determining whether all inmates have access to legal materials." *Cruz v. Hauck,* 515 F.2d 322, 333 (5th Cir.1975), *cert. de-*

*nied,* 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976). In determining whether prisoners enjoyed access, the court noted those individuals whose confinement was "of a very temporary nature" were not denied access since, "[f]or example, an inmate held in the jail for only two or three days while on the way to a state prison reasonably may await transfer before filing a habeas petition." 515 F.2d at 333. This, of course, is not the present case scenario. While the jail serves to house some prisoners "of a very temporary nature",[1] there are many others who have been housed for several months. Indeed, under Washington's new sentencing guidelines, 1984 Wash.Legis.Serv. Ch. 209, House Bill 1247, p. 1608, effective July, 1984, county jails now are housing persons who will be serving sentences in excess of one year. That is, county jails, including Spokane County Jail now house "state" prisoners. Yet, there are no plans or budget for a law library or persons trained in the law to assist these prisoners. Admitted Facts 14 & 15. To steadfastly maintain, as defendants do, that the label "county jail" precludes characterizing the penal institution as a "state" facility under these facts exalts form over substance.

The second reason for rejecting defendants' contention that *Bounds* does not apply to "local" jails is that the Ninth Circuit has unequivocally held to the contrary. As noted in this court's previous Order, in *Leeds v. Watson,* 630 F.2d 674, 676 (9th Cir.1980), *Bounds* was applied to the Kootenai County Jail. This court takes judicial notice that the Kootenai Jail is located only forty (40) miles from Spokane. Rule 201(b), (c), & (f), Fed.R.Ev. Kootenai County Jail, "a converted house in Coeur d'Alene, Idaho", was "used to house pretrial detainees, convicted persons, and juveniles". 630 F.2d at 675. The Idaho facility

---

**1.** That some very short term prisoners are housed at the County Jail does not obviate the rights of those who are entitled to use of a library or assistance from legal personnel. The short term inmates will not enjoy a windfall since, logistically, it should be a relatively simple matter for those providing legal assistance under the proposed stipulated remedy to separate the requests received from those housed for only a few days from those housed for longer stays.

is much smaller than Spokane's. *See Leeds*, 630 F.2d at 676 (the housing in Kootenai County Jail of more than 14 prisoners at once constituted overcrowding). Defendants would have this court decline to follow the clear dictate in *Leeds* that prisoners housed in county jails, rather than in state institutions, have the constitutional right of meaningful court access prescribed by *Bounds* and its progeny. However, the Ninth Circuit has strongly admonished that trial courts "are bound by the law of their own circuit" regardless of "how egregious in error they may feel their own circuit to be." *Hasbrouck v. Texaco Inc.*, 663 F.2d 930, 933 (9th Cir.), *cert. denied*, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982).

Finally, while not dispositive of this issue, it is also noteworthy that the Washington Department of Corrections officials, in promulgating the Wash.Adm.Code, apparently had in mind an interpretation of *Bounds* similar to this court's. See, *e.g.,* WAC 289–22–100(4)(a) (1983); WAC 289–22–200(4)(a) (1983), WSR 84–21–042 (Nov. 7, 1984); WAC 289–14–005(3) (1983), quoted and discussed *infra.*

STATE CREATED LIBERTY INTEREST

■ Even were this court to conclude the stipulated facts failed to demonstrate inadequacy of court access under the *Bounds* "fundamental right" theory, an alternative constitutional basis exists for reaching the same result. That is, Washington's prison regulations create a constitutionally protected liberty interest.

As recognized in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Supreme Court has dictated that "liberty" interests protected by the Fourteenth Amendment of the United States Constitution may arise from two sources, the Due Process Clause itself and the laws of the states, citing *Meachum v. Fano*, 427 U.S. 215, 223–27, 96 S.Ct. 2532, 2537–40, 49 L.Ed.2d 451 (1976).[2] At a minimum, the State of Washington has created a right for county prisoners to have meaningful access to courts for pursuance of civil actions. As premised in *Helms*, state regulations governing the administration of prisons may create a liberty interest when the regulation is "unmistakenly mandatory". *Helms*, 103 S.Ct. at 871. As demonstrated in *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983), "a State creates a protected liberty interest by placing substantive limitations on official discretion."

Importantly, the Washington Administrative Code (WAC) provides that its prison standards are "mandatory ... unless specifically labeled as advisory or not applicable." WAC 289–14–005(1) (1983). The adoption of "mandatory" standards are "intended to meet minimum legal requirements. ..." WAC 289–14–005(3) (1983). WAC 289–14–005, *et seq.*, apply "to holding, detention or correctional facilities as defined under WAC 289–02–020." WAC 289–14–005(1)(9) (1983). WAC 289–12–020(9) defines "holding facility" as:

... a facility operated by a governing unit primarily designed, staffed and used for the temporary housing of adult persons charged with a criminal offense prior to trial or sentencing and for the temporary housing of such persons during or after trial and/or sentencing, but in no instance shall the housing exceed thirty days.

A "detention facility" is one:

... operated by a governing unit primarily designed, staffed and used for the temporary housing of adult persons

---

**2.** "Property" interests differ from liberty interests only to the extent that the former never arise from the Due Process Clause itself, but instead, always "are created and their dimensions [always] are defined by existing rules or understandings that stem from an independent source such as state law." *Loehr v. Ventura County Comm. College Dist.,* 743 F.2d 1310, 1314 (9th Cir.1984) quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). However, as with state created liberty rights, federal constitutional law "determines whether that interest rises to the level of a 'legitimate claim to entitlement' protected by the Due Process Clause." *Loehr, supra,* quoting *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

charged with a criminal offense prior to trial or sentencing and for the housing of adult persons for purposes of punishment and correction after sentencing or persons serving terms not to exceed ninety days.

WAC 289–02–020(6) (1983).

"Correctional facilities" are those defined as:

> ... operated by a governing unit primarily designed, staffed and used for housing of adult persons serving terms not exceeding one year for the purposes of punishment, correction, and rehabilitation following conviction of a criminal offense.

WAC 289–02–020(4) (1983).

Significantly, a "jail":

> ... means any holding, detention, or correctional facility as defined herein, or any farm, camp, or work release facility established and operated in conjunction with a jail.

WAC 289–02–100(4)(a) (1983) (applying to holding facilities) and WAC 289–22–200(4)(a) (1983), WSR 84–21–042 (Nov. 7, 1984) (applying to detention and correctional facilities) identically provide as follows:

> (4) Legal assistance.
> (a) When adequate professional legal assistance is not available to prisoners for purposes of preparing and filing legal papers, *a jail shall provide* access to necessary law books and reference materials.

Emphasis added. The only exception to this requirement is that legal assistance is not required if the holding facility houses prisoners for no longer than seventy-two (72) hours. WAC 289–22–100(4)(a) (1983); WAC 289–14–005(2).

Thus, the unavoidable conclusion is that the "explicitly mandatory language" used in conjunction with the substantive right created a protected liberty interest within the meaning of the Fourteenth Amendment. Indeed, as written, the entitlement to a law library or legal assistance is treated as an unassailable citadel unless the prisoner is incarcerated for less than three (3) days.[3] Since the county now concedes that it has no legal library or persons trained in the law to assist prisoners, and has no intention of remedying the problem absent a court order, a due process violation exists.[4]

■ At this point, it is appropriate to note that the evolving concepts of Eleventh Amendment immunity of states not consenting to suit in federal court do not preclude the relief sought in this action. This is so because regardless of whether the question is styled as one concerning a fundamental constitutional right emanating from an unidentified section of the federal constitution or one implicating a state created liberty interest under the Fourteenth Amendment, this suit challenges the constitutionality of the actions of county and/or state officials. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984). As such, the litigation may not be termed as against the state for purposes of delineating the real party in interest. *Pennhurst, supra.*

Consequently, this court GRANTS plaintiffs' Motion for Summary Judgment and declares defendants' actions to be in violation of the United States Constitution. Defendants are directed to implement the stipulated proposed remedy. This court retains jurisdiction to enforce the provisions of this Order.

**3.** The Code also provides for emergency temporary suspension, however. WAC 289–14–010 (1983).

**4.** It is unnecessary to define the quantum of "process" necessary to safeguard plaintiffs' entitlement. That is, whether a law library, considered solely as a state created right for purposes of the Due Process Clause, may be withheld after some species of a hearing, whether by a detailed adversary proceeding or by an informal nonadversary review, need not be addressed. Defendants have not attempted to justify the deprivation, temporarily or otherwise, as based upon balancing arguably overriding state interests such as the need to preserve discipline and maintain security.

IT IS SO ORDERED. The Clerk is directed to enter judgment for plaintiffs and is further directed to forward copies of this Order and the Judgment to counsel.