**Charles TURIANO, Plaintiff,**

**v.**

**Fred SCHNARRS, et al., Defendants.**

**Civ. A. No. 1:CV–93–0368.**

United States District Court,
M.D. Pennsylvania.

May 5, 1995.

Charles Turiano, Huntingdon, PA, pro se.

Peter M. McManamon, Henry, Corcelius, Gates, Gill & Ody, Huntingdon, PA, for defendants.

### *MEMORANDUM*

RAMBO, Chief Judge.

### *Background*

Before the court is an action initiated under 42 U.S.C. § 1983 by Charles Turiano, who is presently incarcerated in State Correctional Institution–Huntingdon ("SCI–Huntingdon") in Huntingdon, Pennsylvania. During the time pertinent to this suit Plain-

tiff was a pretrial detainee in Huntingdon County Jail (the "Jail") in Huntingdon. Plaintiff names as defendants (each sued in their individual capacities): Fred Schnarrs, Jail Warden; Duane Black, Jail Deputy Warden; and Richard Smith, a Jail corrections officer. (Doc. 14.)

Plaintiff filed his original complaint on March 31, 1993, essentially claiming that his rights under the United States Constitution had been violated because: (1) the Jail was hot, dirty, had inadequate plumbing, and was infested with insects; (2) the Jail law library was inadequate and inmates were prevented from providing legal assistance to other inmates; (3) newspapers were withheld from him or were delivered in incomplete form; (4) Jail officials did not readily provide carbon paper to inmates; (5) inmates were prevented from sealing outgoing mail and that one of Plaintiff's pieces of mail was kept from him; (6) when Plaintiff was in solitary confinement, Jail officials kept his cell lighted all the time; and (7) Jail officials denied Plaintiff a visit with his niece.[1] (Doc. 1.)

On July 20, 1993 Plaintiff amended his complaint. (Doc. 14.) In the amended complaint he does not include some of his prior complaints and specifically alleges that his rights under the First, Sixth, and Fourteenth Amendments to the United States Constitution were violated as follows: (1) Defendants violated Plaintiff's right to access to the courts since they neither provided an adequate law library for inmates nor provided sufficient legal assistance by individuals; (2) Defendants violated Plaintiff's procedural due process rights in multiple prison disciplinary proceedings; (3) Defendants opened incoming and outgoing legal mail without Plaintiff present; and (4) Defendants withheld some personal mail sent from the Veterans' Administration. (*Id.* at pp. 1–8.) Plaintiff requests a declaratory judgment, com-

pensatory damages, and such other relief as the court finds proper. (*Id.* at p. 10.)

A brief summary of key undisputed events giving rise to this action is in order. Plaintiff was confined in the Jail as a pre-trial detainee awaiting disposition of criminal homicide charges from June 19, 1990 until May 21, 1991. (Doc. 14, p. 4; Doc. 37 (Pltf.'s Statement of Undisputed Material Facts (attached to Pltf.'s Partial Summary Judgment Motion)), unnum. p. 1; Doc. 42 (Deft.s' Statement of Undisputed Material Facts), p. 1.) Plaintiff was transferred from the Jail to State Correctional Institution–Camp Hill in Camp Hill, Pennsylvania and was later convicted and sentenced. (Doc. 42 (Defts.' Statement of Undisputed Material Facts), pp. 1, 7; Doc. 55 (Pltf.'s Response to Defts.' Statement of Undisputed Material Facts), pp. 1, 3.) Defendant Schnarrs became Jail Warden on June 15, 1990. (Doc. 47, unnum. p. 2.) Defendants Black and Smith were employed as Deputy Warden and corrections officer, respectively, throughout the time when Plaintiff was confined in the Jail. (Doc. 42, p. 2.; Doc. 55, p. 1.)

The Jail can hold fifty (50) inmates and usually contains forty (40) prisoners. (Doc. 50 (Schnarrs Aff. within Defts.' Appendix in Opposition to Pltf.'s Motion for Summary Judgment), p. 15.[2]) Throughout his pretrial detention Plaintiff was represented by counsel in his criminal proceeding. (Doc. 56 (Pltf.'s Opposing Brief to Defts.' Summary Judgment Motion), p. 7; Doc. 39 (Pltf.'s Appendix in Support of Motion for Partial Summary Judgment), p. 8.; Doc. 48 (Defts.' Opposing Brief)[3], unnum. p. 10.) While Plaintiff was detained in the Jail, a small library existed for inmates' use. The Jail library contained legal and non-legal materials, but, during Plaintiff's confinement in the Jail, did not contain: 1) volumes 1–700 of the Federal Supplement; 2) volumes 1–800 of the Federal Reporter, Second Series; 3) only two vol-

---

1. The court must construe liberally Plaintiff's pleadings. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *Fischer v. Cahill,* 474 F.2d 991, 993 (3d Cir.1973).

2. Document 50 of the record has the same text as Document 51 of the record (Defts' Appendix in Support of Motion for Summary Judgment).

3. Document 48 of the record is almost identical to Document 49 of the record (Defts' Supporting Brief to Summary Judgment Motion).

umes of the Supreme Court Reporter; 4) Title 42 of the United States Code; or 5) any federal indices, federal annotated statutes, or other reference materials. (*Id.* (Answers to Pltf.'s First Request for Admissions) at pp. 4–5, 11–12.) The Jail had a paging system whereby Jail officials would obtain law books or copies of cases—and perhaps other legal reference materials—from the Huntingdon County Courthouse Law Library (the "County Law Library") which were requested by Jail inmates. (*Id.* at p. 6.; Doc. 50 (Peters Affidavit), p. 25.)[4]

When Plaintiff was detained, no Jail staff member had been trained to provide legal assistance to any inmate who wished to initiate a civil suit. (Doc. 39, p. 8.) The Jail had no service contracts with "any legal services agency" to provide legal assistance to inmates, but Jail officials could give the names of legal assistance referral services (for example, Keystone Legal Services) to inmates upon their request. (*Id.* at pp. 7, 10.) (Plaintiff received a letter dated November 8, 1993 from Frederick R. Gutshall of the Huntingdon County Public Defender's office which stated that that office handles only state-level criminal defense work and not any civil litigation. (Doc. 39, p. 18.)) Plaintiff never requested legal assistance from any of the Defendants nor from any other Jail employees. (Doc. 42, unnum. pp. 3, 4; Doc. 55, p. 2.)[5] Plaintiff concedes that Defendants Black and Smith "are not involved in policy-making" at the Jail nor "responsible for purchasing and/or supplying law books, legal materials or legal assistance." (Doc. 42, unnum. p. 4; Doc. 55, p. 2.)

■ Before the court are four motions which have been fully briefed and are ripe for consideration: (1) motion for partial summary judgment (access to the court and procedural due process claims) by Plaintiff (Doc. 37); (2) motion for summary judgment by Defendants (Doc. 41); (3) motion for leave to amend answer to the complaint by Defendants with amended answer attached (Doc. 44); and (4) motion to strike portions of affidavits (submitted by Defendants) by Plaintiff. (Doc. 52.) First, the motion for leave to amend answer and the motion to strike will be addressed. Then, the court will consider the cross-motions for summary judgment.[6]

4. In his sworn affidavit Plaintiff states that he was unaware that he could obtain legal books from anywhere except from the Jail library. (Doc. 39, p. 15; Doc. 37 (Pltf's Statement of Undisputed Material Facts), unnumbered p. 3). He also alleges that the Jail Handbook distributed to inmates during his detention summarily listed various prisoners' constitutional rights, including access to the courts, but did not mention the paging system. (Doc. 39, pp. 6, 15; Doc. 37, unnumbered p. 3; Doc. 56, unlabeled ex. 1.) When Defendant Schnarrs was presented with a requested admission that the Jail Handbook did not inform inmates about the paging system, he denied the admission "as stated" and stated: "The method of obtaining legal materials was well known to the inmates at the Huntingdon County Jail." (Doc. 39, p. 7.) Plaintiff vigorously disputes this assertion in several pleadings. Similarly, in response to two other requested admissions—that Jail inmates in general and Plaintiff in particular were not provided with a list of law books available from the County Law Library—Schnarrs denied the admission "as stated" and stated that no inmate including Plaintiff had asked for such a list. (*Id.*)

5. On the issue of Plaintiff's use of the Jail library, Plaintiff in his sworn affidavit states in conclusory fashion that he visited the library several times (no specific or approximate dates are given) and did not find legal material he needed to prepare a civil rights complaint. (Doc. 39, p. 16.) On one occasion Plaintiff alleges that he asked an unnamed correctional officer "whether that was the extent of the law books" and the officer said "'that's all we have.'" (*Id.*) Also, Plaintiff denies the statement: "Plaintiff never requested any legal volumes from any employees at the [Jail]." (Doc. 55, p. 2; Doc. 42, p. 3.)

6. With regard to several of Plaintiff's claims, little analysis is needed to determine that Defendants deserve judgment as a matter of law.

First, the court addresses Plaintiff's mail-related claims. In his opposing brief to Defendants' summary judgment motion Plaintiff states that he does not oppose Defendants' motion with regard to the confiscation of personal and legal mail allegations. (Doc. 56, p. 8.) Some of Plaintiff's mail-related claims pertain not to confiscation but to opening mail outside Plaintiff's presence. It is possible that Plaintiff still wishes to press these claims. Assuming *arguendo* that he does, Defendants clearly are entitled to judgment as a matter of law on these mail-related claims because, *inter alia*, they either are presented in conclusory fashion or are barred by the applicable statute of limitations which is two years. *See Owens v. Okure*, 488 U.S. 235, 249–50, 109 S.Ct. 573, 581–82, 102 L.Ed.2d 594 (1989) (holding that the residual or general applicable state per-

*Discussion*

## I. Motion for Leave to Amend Answer to the Complaint

■ In their original answer, which was filed on December 14, 1993, Defendants did not include the affirmative defense of "governmental immunity and/or qualified immunity." (Doc. 25.) By motion filed five months later—and very soon after Plaintiff had moved for partial summary judgment—Defendants requested leave to amend their answer pursuant to Federal Rule of Civil Procedure 15 so that this affirmative defense could be included. (Doc. 44.) In their supporting brief Defendants argue that their motion should be granted because, *inter alia*, Plaintiff will not be prejudiced and the progress of the suit will not be delayed. (Doc. 45.) Plaintiff opposes the motion primarily on grounds of "undue and unexplained delay" (Doc. 54, p. 3), prejudice, and waiver of the defense pursuant to Federal Rule of Civil Procedure 8(c). With regard to prejudice Plaintiff argues that "the [D]efendants waited until discovery was closed and 'ambushed' plaintiff with an unexpected defense." (*Id.* at p. 6.) Defendants concede that discovery had been closed when they filed their motion. (Doc. 44, p. 1.)

■ Federal Rule of Civil Procedure 8(c) states that all affirmative defenses, such as qualified immunity, must be pled in response "to a preceding pleading" such as a complaint. But "[f]ailure to raise an affirmative defense in a responsive pleading ... does not always result in waiver." *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1373 (3d Cir.1993). The defense may be raised "in an appropriate motion [such as a summary judgment motion]" *Id.* (brackets added). *Accord Batiste v. Burke*, 746 F.2d 257, 258–259 n. 1 (5th Cir.1984) ("there is ample authority for raising affirmative defenses by summary judgment motion in the context of the official immunity defense ..."). The Third Circuit Court of Appeals has also held that, pursuant to Federal Rule of Civil Procedure 15(a), "a responsive pleading may be amended at any time by leave of court to include an affirmative defense, and 'leave shall be freely given when justice so requires '.... Unless the opposing party will be prejudiced, leave to amend should generally be allowed." *Charpentier v. Godsil*, 937 F.2d 859, 863–64 (3d Cir.1991) (quoting Rule 15(a)). The " 'defendant does not waive an affirmative defense if '[h]e [or she] raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.' " *Id.* at 864 (quoting *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir.1986)) (internal quotation omitted). Rule 15(a), as Defendants emphasize, represents a liberal policy in favor of amendments. *E.g., Adams v. Gould*, 739 F.2d 858, 864 (3d Cir.1984), *cert. denied*, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985); *Charpentier*, 937 F.2d at 864.

In the instant action the court concludes that Defendants raised the issue of qualified immunity "at a pragmatically sufficient time" and by appropriate motion—both in a motion

---

sonal injury statute of limitations should be applied in § 1983 actions); *Smith v. City of Pittsburgh*, 764 F.2d 188, 194 (3d Cir.), *cert. denied*, 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985) (Pennsylvania has a personal injury statute of limitations of two years). *See also* 42 Pa.Cons.Stat.Ann. § 5524. Thus, summary judgment will be granted to Defendants on the mail-related claims.

Next, the court turns to the procedural due process claims. Plaintiff failed to raise his procedural due process claims in his original complaint. In that complaint he merely refers to the fact that he was in solitary confinement at some point—he later indicates that it was punishment imposed as a result of the disciplinary proceedings (Doc. 56, p. 9)—and complained that unnamed Jail officials kept his cell lighted all the time. (Doc. 1, p. 3(d).) The applicable statute of limitations does not permit the introduction of

these new claims in the amended complaint, and Fed.R.Civ.P. 15(c)(2) provides that relation back is permitted only when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading...." The court observes that "[w]hen plaintiff attempts to allege an entirely different transaction by amendment, Rule 15(c) will not authorize relation back...." 6A Charles A. Wright & Arthur R. Miller, *et al.*, Federal Practice and Procedure § 1497 at pp. 70, 73 (1990).

Thus, despite Plaintiff's argument to the contrary, his explicit assertion in his amended complaint of procedural due process violations during his prison disciplinary proceedings clearly does not relate back to his original complaint pursuant to Fed.R.Civ.P. 15. Summary judgment will be granted to Defendants on the procedural due process claims.

to amend their answer and in their summary judgment motion. More importantly, the court cannot find that Plaintiff was prejudiced by the Defendants' delay. The defense of qualified immunity, as discussed in greater detail below, concerns the existence of a plaintiff's clearly established rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). The record shows that when Plaintiff conducted discovery he clearly contemplated whether Defendants were aware of the law handed down by the United States Supreme Court on which Plaintiff relied. For example, in Plaintiff's First Request for Admissions, Plaintiff requests three admissions of Defendant Schnarrs which focus on his knowledge of prisoners' constitutional right of access to the courts and of *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the seminal case on access to the courts. (Doc. 39 (Pltf.'s Appendix in Support of Motion for Partial Summary Judgment), p. 3.) Similarly, in Plaintiff's Third Set of Interrogatories, Plaintiff poses three interrogatories to Defendant Black which center on his knowledge of the right to procedural due process in prison disciplinary proceedings and of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the seminal case on this procedural due process right. (*Id.* at p. 25.) [7]

7. Also, in a footnote to his supporting brief to his motion for partial summary judgment Plaintiff explicitly hints that Defendants well may be entitled to qualified immunity but notes that they have not raised it yet. (Doc. 38, p. 11 n. 4.)

8. The paragraphs under attack are as follows:

*Schnarrs' Affidavit*
15. Inmates incarcerated at the Huntingdon County Jail were generally aware that legal books and reference materials were available from the Huntingdon County Law Library upon request.
16. Defendant Schnarrs believes that Plaintiff was aware that legal references and reference books were available from the Huntingdon County Law Library.

\* \* \* \* \* \*

18. I was aware that Keystone Legal Services could provide legal assistance to inmates who desired to file Section 1983 civil rights actions.
19. I was aware that the Pennsylvania Bar Association and the Huntingdon County Bar Association, through the Court Administrators

Thus, the record severely undermines Plaintiff's claim that he was "ambushed" by Defendants' motion for leave to amend their answer. In addition, the determination of qualified immunity essentially is a legal rather than factual question, *e.g., Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991), and Plaintiff had an opportunity—particularly in opposing Defendants' summary judgment motion—to rebut Defendants' assertion that they were entitled to qualified immunity. Accordingly, Defendants' motion for leave to amend their answer will be granted and the amended answer will be accepted by the court.

## II. Motion to Strike Portions of the Defendants' Affidavits

In his motion pursuant to Federal Rule of Civil Procedure 56(e), Plaintiff challenges paragraphs of affidavits by all three defendants and by non-defendant John C. Peters, who worked as a Law Clerk to the Honorable Stewart L. Kurtz of the Court of Common Pleas of Huntingdon County and who oversaw the County Law Library when Plaintiff was confined in the Jail. These four affidavits were submitted in Defendants' Appendix in Opposition to Plaintiff's Motion for Summary Judgment.[8]

office[,] had attorney referral resources available to inmates who desired to file Section 1983 civil rights actions.
(Doc. 50, pp. 16–17.)
*Black Affidavit*
12. Inmates incarcerated at the Huntingdon County Jail were generally aware that legal books and reference materials were available from the Huntingdon County Law Library upon request.
13. Defendant Black believes that Plaintiff was aware that legal resources and reference books were available from the Huntingdon County Law Library.
(Doc. 50, p. 20.)
*Smith Affidavit*
8. Inmates incarcerated at the Huntingdon County Jail were generally aware that legal books and reference materials were available from the Huntingdon County Law Library upon request.
9. Defendant Smith believes that Plaintiff was aware that legal resources and reference books were available from the Huntingdon County Law Library.
(Doc. 50, p. 23.)

Rule 56(e) provides, in pertinent part: "[1] [A]ffidavits shall be made on personal knowledge, [2] shall set forth such facts as would be admissible in evidence, and [3] shall show affirmatively that the affiant is competent to testify to the matters stated therein." Courts have held that "statements prefaced by the phrases, 'I believe' or 'upon information and belief' or those made upon an 'understanding' ... are properly subject to a motion to strike." *Carey v. Beans,* 500 F.Supp. 580, 583 (E.D.Pa.1980) (internal citation omitted), *aff'd,* 659 F.2d 1065 (3d Cir. 1981) (table). *Accord Hlinka v. Bethlehem Steel Corp.,* 863 F.2d 279, 281–82 (3rd Cir. 1988). Also, the personal knowledge requirement means that affidavits must be "devoid of hearsay, conclusory language and statements which purport to examine thoughts as well as actions." *Carey,* 500 F.Supp. at 583 (citing *Maiorana v. MacDonald,* 596 F.2d 1072, 1080 (1st Cir.1979)).

Applying these legal principles to each of the challenged statements in the four affidavits, it is clear that Plaintiff's motion to strike must be granted because each statement fails to satisfy at least one of the elements of the three-part test. In general, the statements were not based on the affiant's personal knowledge.

### III. Cross–Motions for Summary Judgment

Having decided that Defendants are entitled to judgment as a matter of law on the procedural due process and mail-related claims, the court now will review the cross-motions for summary judgment as they pertain to the alleged violation of Plaintiff's right to access to the courts.

First, it is important to review the legal standards which must be applied in an analysis of the merits of a summary judgment motion.

Summary judgment analysis is two-pronged. Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Young v. Quinlan,* 960 F.2d 351, 357 (3d Cir.1992). "As to materiality, 'it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.'" *Gabai v. Jacoby,* 800 F.Supp. 1149, 1153 (S.D.N.Y.1992).

If the court finds that there is an issue of fact in dispute, its inquiry does not end but takes up the second prong of the analysis. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact [in dispute]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). A dispute is "genuine" only if "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 243, 106 S.Ct. at 2507. "Once the moving party has carried the initial burden of showing that no genuine issue of material fact exists, the non-moving party 'must make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by the depositions and admissions on file.'" *Pastore v. Bell Tel. Co. of Pa.,* 24 F.3d 508, 511 (3d Cir.1994).

The non-moving party "cannot merely rely upon conclusory allegations in his [or her] pleadings or in memoranda and briefs to establish a genuine issue of material fact." *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir.1992) (brackets added). All inferences, however, "'should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true.'" *Pastore,* 24 F.3d at 512. *See also Betz Lab., Inc. v. Hines,* 647 F.2d 402, 404 (3d Cir.1981).

*Peters Affidavit*
6. To my knowledge, no inmates were refused access to any cases or legal reference volumes at the Huntingdon County Law Library.
(Doc. 50, p. 26.)

■ Next, the court considers the origin and nature of the constitutional right of access to the courts and the legal standards which govern the present claim. Courts have found different birthplaces of the right of access to the courts. *E.g., Simmons v. Dickhaut,* 804 F.2d 182, 183 (1st Cir.1986) (sources of right of access include the First Amendment, the due process clauses, and the Privileges and Immunities Clause of Article IV, section 2). It is clear that this most important protection originates at least from the First Amendment and from the due process clauses of the Fifth and Fourteenth Amendments. *Procunier v. Martinez,* 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974) ("The constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights"); *Hudson v. Palmer,* 468 U.S. 517, 523, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984) ("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts").

The United States Supreme Court in *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977) held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of *meaningful* legal papers by providing prisoners with *adequate law libraries or adequate assistance from persons trained in the law*" (emphasis added). In its analysis the *Bounds* court stated that "our decisions have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts." *Id.* at 824,

97 S.Ct. at 1496. The Supreme Court teaches that in considering whether inmates' right to access to the courts is protected "[t]he inquiry is ... whether law libraries or other forms of legal assistance are needed to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 825, 97 S.Ct. at 1496. Although the *Bounds* court did not define "adequate," it

> noted a number of 'alternative means to achieve [the stated] goal' ... including 'adequate' law libraries; 'some degree of professional or quasi-professional legal assistance ...; training of inmates as paralegal assistants to work under lawyers' supervision, the use of paraprofessionals and law students, either as volunteers or in formal clinical programs ...;' or the use of attorneys as volunteers, part-time consultants or full-time staff counsel.

*Abdul–Akbar v. Watson,* 4 F.3d 195, 202, 205 (3d Cir.1993) (citations omitted) (in action by inmates confined in maximum security unit where there were trained paralegals, a satellite library, and a "paging system" to the main prison library, appellate court held that prison officials were entitled to qualified immunity from charges of access to the courts violations).

The Third Circuit Court of Appeals has yet to consider (in a memorandum) an access to the courts suit involving pretrial detainees. However, courts within the Third Circuit and within other circuits have held that the *Bounds* analysis applies to pretrial detainees (who are not detained for a very short time), as well as to convicted inmates, or have merely assumed that pretrial detainees enjoy that protection.[9] Also, the Third Circuit has

---

9. *Martin v. Tyson,* 845 F.2d 1451, 1456 (7th Cir.), *cert. denied,* 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988) (applying *Bounds* analysis to pretrial detainees without addressing issue of applicability); *Straub v. Monge,* 815 F.2d 1467, 1467–68, 1470 (11th Cir.) (holding that protection of access to the courts is enjoyed by pretrial detainee in county jail), *cert. denied,* 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987); *Love v. Summit County,* 776 F.2d 908, 912 (10th Cir. 1985) (same), *cert. denied,* 479 U.S. 814, 107 S.Ct. 66, 93 L.Ed.2d 25 (1986); *Morrow v. Harwell,* 768 F.2d 619, 624 (5th Cir.1985) (holding that protection of access to the courts is enjoyed

by pretrial detainees in county jail as long as detention is not so short that there is no time to petition the courts); *Young v. Larkin,* 871 F.Supp. 772, 782 (M.D.Pa.1994) (applying *Bounds* analysis to pretrial detainees without addressing issue of applicability), *aff'd,* 47 F.3d 1163 (3d Cir.1995) (table); *Acevedo v. Forcinito,* 820 F.Supp. 886, 887 (D.N.J.1993) (holding that *Bounds* principles apply to pretrial detainees); *Colbert v. Gardner,* No. 88–2630, 1991 WL 199860, at *1 and *6 (D.N.J. October 1, 1991) (applying *Bounds* analysis to pretrial detainees without addressing issue of applicability), *aff'd,*

not addressed the applicability of the *Bounds* principles to county jail inmates, but other courts within this circuit have so applied *Bounds*. *E.g., Straub,* 815 F.2d at 1469–70 (finding that protection of access to the courts is enjoyed by pretrial detainee in county jail); *Morrow,* 768 F.2d at 624 (holding that protection of access to the courts is enjoyed by pretrial detainees in county jail as long as detention is not so short that there is no time to petition the courts); *Muslim v. Frame,* 854 F.Supp. 1215, 1224–25 (E.D.Pa. 1994) (applying *Bounds* to pretrial detainee in county jail); *Colbert,* 1991 WL 199860 at *1 and *6 (applying *Bounds* analysis to county inmates without deciding issue of applicability); *Melnyczenko v. Bodnar,* No. 87–5741, 1988 WL 76349 at *2 (E.D.Pa. July 5, 1988) (applying *Bounds* analysis to county inmates without deciding issue of applicability); *Tuggle v. Barksdale,* 641 F.Supp. 34, 38–39 (W.D.Tenn.1985) (applying *Bounds* principles to county inmates); *Brown v. Manning,* 630 F.Supp. 391, 397 (E.D.Wash.1985) (holding that *Bounds* applies to "local jails"). *See Bounds,* 430 U.S. at 824, 97 S.Ct. at 1496 ("our decisions have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts").

▆▆▆▆ While prison officials have flexibility in implementing a program of legal assistance resources and each program "must be evaluated as a whole on a case-by-case basis," *Abdul–Akbar,* 4 F.3d at 203, "this right of access to the courts must be 'adequate, effective and meaningful,' and must be freely exercised without hinderance or fear of retal-

iation." *Milhouse v. Carlson,* 652 F.2d 371, 374 (3d Cir.1981). *See Valentine v. Beyer,* 850 F.2d 951, 955 (3d Cir.1988) ("prison practices or regulations are invalid if they can be construed as imposing barriers to such access"). A plaintiff is not required to plead that he or she was denied access to the courts at a particular time and was injured thereby. Rather, "in cases ... directly involving prisoners' access to legal knowledge ... the analysis of whether an actual constitutional injury exists is simply the *Bounds* analysis." *Peterkin v. Jeffes,* 855 F.2d 1021, 1041 (3d Cir.1988) (in action brought by death-sentenced inmates in state facilities appellate court remanded suit for further factual findings about availability of counsel to inmates).[10] The *Bounds* analysis must be applied to the situation of the individual plaintiff or plaintiffs. *E.g., Wood v. Housewright,* 900 F.2d 1332, 1335 (9th Cir.1990). *See Abdul–Akbar,* 4 F.3d at 203, 205.

▆▆▆▆ The Third Circuit has held that in assessing whether an inmate's right of access to the courts was violated,

> the standard to be applied is whether the legal resources available to a prisoner will enable him [or her] to identify the legal issues he [or she] desires to present to the relevant authorities, including the courts, and to make his [or her] communications with and presentations to those authorities understood.

*Abdul–Akbar,* 4 F.3d at 203 (brackets added). Prison officials such as defendants have the burden of showing that they adequately ensured a prisoner's right to access to the courts. *Tillery,* 719 F.Supp. at 1282. *Ac-*

968 F.2d 12 (3d Cir.1992) (table). *See Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979) ("pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners"); *Kost v. Kozakiewicz,* 1 F.3d 176, 188 n. 10 (3d Cir.1993) (in eighth amendment case stating that "[p]retrial detainees ... are entitled to at least as much protection as convicted prisoners....")

10. As a prelude to its analysis of plaintiffs' access to the court claims the *Peterkin* court stated: "We emphasize here that since the facts found by the district court concern only death-sentenced prisoners, our opinion and conclusions are correspondingly applicable to this unique group."

*Id.* at 1033. However, considering the nature of the analysis of the injury requirement in *Peterkin,* this court in *Young v. Larkin, supra,* and two sister courts within this circuit have relied on *Peterkin* in regard to the injury requirement in access to the courts cases initiated by plaintiffs other than death-sentenced prisoners. *Young,* 871 F.Supp. at 783 n. 21 (plaintiff is pretrial detainee); *Prisoners' Legal Ass'n v. Roberson,* 822 F.Supp. 185, 187 (D.N.J.1993) (plaintiffs are inmates who are trained to provide legal assistance); *Tillery v. Owens,* 719 F.Supp. 1256, 1282 (W.D.Pa.1989) (plaintiffs are segregated inmates, including restrictive housing inmates), *aff'd,* 907 F.2d 418 (3d Cir.1990) (appeal did not address access to courts claim).

cord *Rich v. Zitnay,* 644 F.2d 41, 43 (1st Cir.1981) (once plaintiff "make[s] a prima facie showing" of inadequate access, the burden shifts to defendant prison officials to prove adequacy); *DeMallory v. Cullen,* 855 F.2d 442, 446 (7th Cir.1988); *Colbert,* 1991 WL 199860, at *6. No defendant in an access to the courts suit is required to show that optimal access was enjoyed by plaintiff prisoner—only that "the minimum that *Bounds* requires" was satisfied. *Abdul–Akbar,* 4 F.3d at 204. In general,

> '[t]he difficult task in cases where [a prisoner's] right of access is at issue in a particular prison is to determine whether the mix of legal resources ... is sufficient to discharge constitutional obligations *while also enabling [prison authorities] to meet their critical responsibility of ensuring internal order and institutional security.'*

*Id.* at 203 (original emphasis) (quoting *Peterkin,* 855 F.2d at 1038).

Now, addressing the instant action, Plaintiff argues that he had inadequate access to the courts because: (1) the Jail library was inadequate and the combination of the paging system with the Jail library was inadequate because the Jail library had no federal indices or federal annotated statutes to enable inmates to request specific legal volumes or cases; (2) no Jail employees were trained to provide legal assistance; (3) public defenders—including Plaintiff's appointed counsel at the time—do not have the authority to do any civil litigation and cannot practice in federal court; (4) Defendants did not inform inmates about the paging system in the Jail Handbook and Plaintiff was not made aware of the paging system; and (5) merely providing referrals to legal services programs is not adequate and meaningful legal assistance because there is no "guarantee" that an inmate would receive help in civil litigation from those programs. (Doc. 38 (Pltf.'s Supporting

Brief), pp. 10–17; Doc. 56 (Pltf.'s Opposing Brief), pp. 1–8.)

Defendants make several arguments in support of their position that they are entitled to judgment as a matter of law on the access issue: (1) Defendants had insufficient personal involvement in Plaintiff's claims to be held liable; (2) throughout the time he was incarcerated Plaintiff had counsel for his criminal proceedings; (3) Defendants are entitled to qualified immunity;[11] (4) Plaintiff never requested legal materials or legal assistance while at the Jail and never communicated a desire to any Jail employee to file a civil action; and (5) insufficient access to the courts was not the reason why Plaintiff could not file a civil lawsuit because after he was transferred to a state facility with presumably adequate legal assistance he did not file the instant action until months later. (Doc. 48 (Defts.' Opposing Brief), unnum. pp. 8–11.)

■■■ First, the court addresses the threshold issue of Defendants' personal involvement in the alleged violations.[12] A plaintiff, in order to state a viable § 1983 claim, must allege that the conduct complained of was committed by a person acting under color of state law and that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or by laws of the United States. *E.g., Cohen v. City of Philadelphia,* 736 F.2d 81, 83 (3d Cir.), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984). A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *E.g., Monell v. Department of Social Serv. of the City of N.Y.,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1979); *Gay v. Petsock,* 917 F.2d 768, 771 (3d Cir.1990); *Rode v. Dellarciprete,* 845 F.2d 1195, 1207–08 (3d Cir.1988); *Capone v. Mari-*

---

**11.** Defendant Schnarrs may argue in passing—in Defts' Response to Pltf's Statement of Undisputed Material Facts—that qualified immunity is deserved because it was unclear at the time what requirements of access to the courts were placed on officials at small jails. (Doc. 47, p. 2.)

**12.** The court also notes that because Plaintiff is not required to show personal injury, pursuant to

*Peterkin,* it is irrelevant whether Plaintiff requested legal materials or legal assistance while he was detained. Also, it is irrelevant that Plaintiff filed the instant action long after he was transferred to a state facility. Defendants do not allege that Plaintiff filed any civil actions while he was detained at the Jail.

*nelli,* 868 F.2d 102, 106 n. 6 (3d Cir.1989). Plaintiff concedes, as described above, that Defendants Black and Smith were not personally involved in the alleged access to the courts violations at the requisite level; thus, they deserve summary judgment on these claims as well and will be dismissed from this action. However, Defendant Schnarrs as the chief administrator of the Jail clearly was personally involved in the alleged violations. The court now addresses the adequacy of Plaintiff's access to the courts.

It is abundantly clear from the description of the Jail library that by itself it was inadequate to provide any meaningful assistance to Plaintiff. Defendants do not explicitly contest this. Turning to the adequacy of the paging system, the court observes that the Third Circuit has indirectly addressed this issue. In *Peterkin,* segregated death-sentenced inmates could not visit the library and instead were provided with a list of the library's resources and request slips to complete in order to obtain any legal volumes or materials on a general subject matter. 855 F.2d at 1034. The *Peterkin* court in its 1985 opinion did not decide whether the paging system at issue was adequate but noted that "[p]aging systems similar to the one established by the Commonwealth, as the sole legal assistance furnished to inmates, have been rejected consistently by other courts of appeals." *Id.* at 1038.

In *Morrow,* one of the appellate cases cited in *Peterkin,* the United States Court of Appeals for the Fifth Circuit was presented with a class action by county jail inmates, including pre-trial detainees. The plaintiffs alleged that the combination of a bookmobile/check-out system and a paralegal assistance program—the paralegals could not give legal advice—failed to provide them with adequate access to the courts. 768 F.2d at 622–624. Inmates generally were not provided with a list of resources available to be checked out and there were no research materials at the jail to use to locate pertinent cases or statutes. *Id.* at 622. The Fifth Circuit agreed that the jail's program as a whole was inadequate under *Bounds. Id.* at 624. *See DeMallory,* 855 F.2d at 446–47 (holding that combination of untrained in-

mate paralegals and paging system where inmates had no resources to determine what materials to request was inadequate); *Toussaint v. McCarthy,* 801 F.2d 1080, 1109–10 (9th Cir.1986) (holding that paging system without direct legal assistance was inadequate), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); *Green v. Ferrell,* 801 F.2d 765, 772–73 (5th Cir.1986) (holding that combination of paging system in county jail—where inmates were provided with an inventory of county law library resources—and no direct legal assistance was inadequate); *Williams v. Leeke,* 584 F.2d 1336, 1339 (4th Cir.1978), *cert. denied,* 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 276 (1979) (holding that combination of paging system and direct assistance is adequate but noting that "[s]imply providing ... books in his cell, if he requests them, gives the prisoner no meaningful chance to explore the legal remedies he might have"); *Tillery,* 719 F.Supp. at 1283 (holding that legal assistance program was inadequate where no direct legal assistance was provided and certain inmates could access the library only through paging system or only for a few hours a month); *United States of America ex. rel. Para–Professional Law Clinic v. Kane,* 656 F.Supp. 1099, 1101, 1104 (E.D.Pa.), *aff'd,* 835 F.2d 285 (3d Cir.1987) (table), *cert. denied sub nom., Zimmerman v. Para–Professional Law Clinic,* 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 511 (1988) (finding that paging system is inadequate under *Bounds* ).

The record in the instant action shows striking similarities to the facts considered by the *Morrow* court. When presented with a request for an admission that, while Plaintiff was confined at the Jail, Jail inmates were not given any list of books available for borrowing through the paging system, Defendant Schnarrs responded: "Denied, as stated. No requests were ever received for a list of law books available from the [County Law Library]." (Doc. 39, p. 7.) One can reasonably infer that no such list was ever provided because it would be made available only upon request. The court notes that, as discussed above, Schnarrs gave essentially the same answer in response to a requested admission about whether the Jail Handbook referred to or described the paging system.

The record does not indicate any affirmative actions by Defendants to make Jail inmates aware of the paging system. The court concludes that the paging system combined with the resources in the Jail library clearly are inadequate under *Bounds*.[13]

■ However, recognizing that adequate access to the courts may be ensured through an adequate law library system *or* adequate personal legal assistance *or* a combination of both, the court must address the argument that Plaintiff enjoyed adequate access to the courts because he had counsel to represent him. Defendants do not contest Plaintiff's statement in his opposing brief that the counsel was "court-appointed." (Doc. 56, p. 7.)

The Supreme Court in *Bounds* noted that "habeas corpus and civil rights actions are of 'fundamental importance ... in our constitutional scheme'", 430 U.S. at 827, 97 S.Ct. at 1497 (internal citation omitted), and stated that "our main concern here is 'protecting the ability of an inmate to prepare a petition or complaint'...." *Id.* at 827 n. 17, 97 S.Ct. at 1497 n. 17 (internal citation omitted). Interpreting *Bounds*, the Third Circuit in *Peterkin* stated:

> a court taking the constitutional measure of a state's policies and practices determining prisoners' access to the courts must explicitly consider what assistance is available to inmates for the purpose of preparing and filing discretionary appeals, petitions for writs of habeas corpus, and civil rights actions.

855 F.2d at 1042. In *DeMallory v. Cullen, supra,* the plaintiff had no direct access to an adequate law library and the district court refused to appoint him counsel to litigate a civil action. On appeal, the Seventh Circuit held that "[d]ependence on untrained inmate paralegals as an alternative to library access

does not provide constitutionally sufficient access to the courts." 855 F.2d at 447. *Accord Valentine,* 850 F.2d at 956 (same). *See Straub,* 815 F.2d at 1468–70 (finding inadequate access to the courts where plaintiff pretrial detainee had no access to a law library, but he had appointed counsel for his criminal proceedings); *Toussaint,* 801 F.2d at 1110 (holding that if inmates are denied physical access to law library, research assistance must be provided); *Nordgren v. Milliken,* 762 F.2d 851, 853–55 (10th Cir.) (state provided access to courts by providing legal assistance in drafting civil complaints), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985); *Mann v. Smith,* 796 F.2d 79, 83–84 (5th Cir.1986) (finding that sufficient access to courts could not be shown simply by fact that pretrial detainee plaintiff had court-appointed attorney because plaintiff testified without rebuttal that that attorney refused to help plaintiff file a civil suit); *Harrington v. Holshouser,* 741 F.2d 66, 69–70 (4th Cir.1984) (finding combination of limited library access and help from untrained inmate paralegals insufficient); *Leeds v. Watson,* 630 F.2d 674, 676–77 (9th Cir.1980) (finding that availability of legal aid organization does not satisfy *Bounds* requirement because assistance could not be provided on demand to all inmates); *Griffin v. Coughlin,* 743 F.Supp. 1006, 1024 (N.D.N.Y.1990) (holding paging system inadequate and noting that a claim by defendants that the availability of a legal services organization (which may be able to assist some inmates) "would most likely be unpersuasive" unless the organization could provide assistance on demand; court quotes *Peterkin* ). *Contra Martucci v. Johnson,* 944 F.2d 291, 295 (6th Cir.1991) (where pretrial detainee had appointed counsel throughout his detention, finding that "availability of counsel ... coupled with the jailers' unrebutted assertion that they pro-

---

13. In his supporting brief Plaintiff cites *Heitman v. Gabriel,* 524 F.Supp. 622 (W.D.Mo.1981). In that decision the court does not discuss *Bounds* or the protection of access to the courts explicitly, but criticizes the "lack of communication between the administration and the inmates" which resulted in little or no awareness by inmates of a legal research system whereby an inmate could *on request* perform research at the county prosecutor's office. *Id.* at 628 n. 5. The Missouri district court astutely observes:

> One may suspect that the administration has been fearful of publicizing this policy, because the current insufficient staff would not be able to cope with a studious jail populace. The right exists, however; it must be met in some manner; *and availability of current law books cannot properly be kept secret.*
>
> *Id.* (emphasis added).

vided inmates with legal materials upon request, defeats [plaintiff's] access to the courts claim").[14]

Also, in *Tillery v. Owens, supra*, a case similar to the instant action, segregated inmates had appointed counsel for post-conviction hearings but no counsel to help them initiate civil rights actions. 719 F.Supp. at 1281. The United States District Court for the Western District of Pennsylvania found that that legal assistance was inadequate to ensure access to the courts. *Id.* at 1282. After analyzing and rejecting a book paging system as inadequate, the court held that the total system of legal assistance provided by prison officials was inadequate. *Id.* at 1283.

In the instant action Defendants state in their briefs that "Plaintiff had counsel representing him regarding his criminal charges" throughout his detention. (Doc. 49, unnum. p. 11.) Defendant Schnarrs admitted that he knew that Plaintiff had counsel, but Schnarrs "has no knowledge of the scope or limitations of the Public Defender's office or court appointed counsel systems." (Doc. 39, p. 8.) Plaintiff indicates in multiple pleadings that his criminal counsel was unavailable to assist him in non-criminal legal actions (Doc. 37 (Pltf.'s Statement of Undisputed Material Facts), unnum. pp. 2, 4; Doc. 38 (Pltf.'s Supporting Brief), p. 12 n. 5; Doc. 39 (Turiano Affidavit), p. 15; Doc. 55 (Pltf.'s Response to Defendants' Statement of Undisputed Material Facts), p. 2; Doc. 56 (Pltf.'s Opposing Brief), p. 7), and attaches the November 8, 1993 letter from the Huntingdon County Public Defender's Office, described above. (Doc. 39, p. 18.) However, Plaintiff does not specifically refer to or describe any efforts he made during his detention to obtain advice or help from his personal court-appointed counsel in filing any civil suits. In addition, the November 8, 1993 letter does not address explicitly the work of the Public Defender's Office *during the time of Plaintiff's detention.*

The present record shows that the legal resources available to Plaintiff during his detention were: an inadequate Jail library; a paging system whose existence was not generally made known by Jail officials; referrals to legal service organizations upon request to Jail officials; no trained assistance available from Jail officials; no contracts with any legal service providers; and possible assistance from court-appointed counsel in filing civil suits. Considering the totality of assistance available to Plaintiff during his detention as shown on the present record, a genuine issue of material fact exists on the issue of adequate access to the courts. This issue is the only remaining viable issue presented in this action. Thus, Plaintiff's motion for partial summary judgment must be denied.

## IV. Qualified Immunity

 Finally, the court shall now determine whether Defendant Schnarrs (the sole remaining defendant) is entitled to qualified immunity on the issue of access to the courts (the sole viable issue in this suit).

 Before a court analyzes a claim of qualified immunity, it first should determine whether a plaintiff has alleged "a viola-

---

**14.** The court notes that the decision in *Young v. Larkin, supra*, by another judge on this court should be considered in analysis of the access to the courts claim in the action *sub judice*. (Defendants did not mention this case in their pleadings.)

In *Young* another judge on this court was faced with a very litigious plaintiff pretrial detainee who had a court-appointed attorney and who did not "refute that he had the opportunity to request and receive legal materials...." 871 F.Supp. at 782. Young did not claim that his legal efforts were hindered by alleged inadequate access to the courts and emphasized that "he was not offered 'legal help.'" *Id.* at 783 & n. 20. On the issue of assistance by Young's court-appointed counsel in filing civil actions, the *Young* court followed the lead of the Sixth Circuit in *Martucci v. Johnson, supra*, and concluded: "Like the record before the *Martucci* court, there is nothing in the instant 'record to lend support to the presumption that [Young] was barred from discussing his segregated confinement—and the legal implications thereof—with his appointed attorney.'" *Id.* at 782 (quoting *Martucci*, 944 F.2d at 295). Young was not found to have suffered inadequate access to the courts. *Id.* at 783 n. 21.

As the extensive discussion in this memorandum indicates, record of the instant action is distinguishable from *Young.* That dissimilarity and the weight of other caselaw (including the *Peterkin* court's comment on necessary consideration of opportunity to file civil actions) persuades the court that the decisions in *Young* and *Martucci* are insufficient to determine the disposition of the instant summary judgment motions.

tion of a clearly established constitutional right." *Siegert,* 500 U.S. at 231, 111 S.Ct. at 1793. The Supreme Court also has noted that qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Officials are entitled to qualified immunity if "their conduct does not violate clearly established statutory rights or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Using an objective legal reasonableness approach, qualified immunity should be denied only if "a reasonable jury could find that the unlawfulness of [defendants'] actions was so 'apparent' that no reasonable [official] could have believed his [or her] actions were lawful." *Lee v. Mihalich,* 847 F.2d 66, 69 (3d Cir.1988) (brackets added). Governing law may be "clearly established" without a previous court decision on point. *Good v. Dauphin County Social Serv. for Children and Youth,* 891 F.2d 1087, 1092 (3d Cir.1989). " '[S]ome but not precise factual correspondence' to precedent" must exist if the court will deem defendant knowledgeable about the lawfulness of his action. *Id.* (quoting *People of Three Mile Island v. Nuclear Regulatory Comm'rs,* 747 F.2d 139, 144 (3d Cir. 1984)). On the issue of established case law the *Good* court also explained:

> The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful.

891 F.2d at 1092.

Schnarrs' assertion of this defense presents a relatively close question. In *Abdul–Akbar,* the Third Circuit began its discussion of qualified immunity by stating: "In our research, we have found that, at least up to this point [mid–1993], case law has not been definitive in establishing the threshold consti-tutional limits of legal access under *Bounds.*" 4 F.3d at 204. However, this court does not interpret that statement to mean that the caselaw on all types of access to the courts actions is not "clearly established." In each access to the courts suit the legal resources program at issue must be evaluated according to its particular characteristics and considering each plaintiff's circumstances. It is possible—as is apparent in this memorandum—that courts have previously analyzed very similar situations.

The *Abdul–Akbar* court was presented with an action by a segregated prisoner where there were paralegal services, a satellite library, and a main library in the prison (with a paging system between them). The court immediately followed its general statement on lack of definitive *Bounds* case law with the following: "It is this state of affairs that has led us to attempt a refinement of such an instruction as it pertains to satellite libraries, an area in *Bounds* jurisprudence which has been virtually unchartered." *Id.* The facts in *Abdul–Akbar* fundamentally differ from those in the instant action. First, segregated inmates, including the plaintiff, enjoyed regular assistance from trained paralegals. *Id.* at 199–200. Turiano did not have the benefit of trained paralegals. Second, the satellite library in *Abdul–Akbar* contained "basic federal and state indices, citators, digests, self-help manuals and rules of court. . . ." *Id.* at 203. The Huntingdon County Jail had none of these reference tools. Third, Abdul–Akbar received 74,553 photocopies through the paging system. *Id.* at 205 n. 19. Turiano received none. Finally, a consent decree had been entered on the facility at issue in *Abdul–Akbar* and agreement on a constitutional legal access plan had been reached; the district court in *Abdul–Akbar* did not even imply that prison officials had failed to comply with the terms of the consent decree. *Id.* at 204. In the instant action no party has indicated the existence of a consent decree.

Considering the weight of caselaw (issued before and during Plaintiff's detention)[15]

---

**15.** Much of the directly applicable case law emanates from outside this circuit, but that is not important. *See Good,* 891 F.2d at 1094–95

(court denied qualified immunity on federal law issues, citing case law from California, Oregon, Wisconsin, Nevada, and South Dakota); *People*

against reliance on a paging system and court-appointed counsel in criminal proceedings, the court concludes that the relevant law was clearly established at the time of Plaintiff's detention. No prison warden in Schnarrs' position could have believed that he was acting lawfully. *See Straub,* 815 F.2d at 1470 (affirming the district court's rejection of qualified immunity defense after affirming holding of inadequate access to the courts for pretrial detainee in county jail). Thus, Schnarrs' defense of qualified immunity must fail. Both parties' summary judgment motions will be denied, with leave to renew, as to the issue of access to the courts.

### Conclusion

At present the following key matters pertinent to access to the courts are unclear: (1) Plaintiff's efforts, if any, to obtain help from his court-appointed counsel during the period from June 1990 to May 1991, and (2) Defendants' efforts, if any, to make known to inmates the existence of the paging system with Huntingdon County Law Library and the resources which could be obtained through the paging system during the period from June 1990 to May 1991. The court concludes that, with further development of the record, this action may be decided without trial. (However, if credibility issues prevent resolution of a genuine issue of material fact, summary judgment may not be appropriate.) The court notes that an affidavit from Plaintiff's court-appointed counsel during his detention would be an important addition to the record.

Thus, the parties will be allowed sixty (60) days from the date of this order to engage in further discovery, including depositions, and twenty (20) days from the end of discovery to file additional dispositive motions. An appropriate order will be issued.

of Three Mile Island, *747 F.2d at 146–49 (court granted qualified immunity after analyzing D.C. Circuit case law,* inter alia, *and deciding that it was unclear).* But see Jermosen v. Smith, *945 F.2d 547, 550 (2d Cir.1991),* cert. denied, *503* U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992) *(relevant case law for qualified immunity determination is issued by Supreme Court and applicable circuit court).*